PEOPLE v KNAPP

Docket No. 210837. Submitted July 11, 2000, at Lansing. Decided January 23, 2001, at 9:05 A.M. Leave to appeal sought.

Jeffrey L. Knapp was convicted by a jury in the Jackson Circuit Court, Charles A. Nelson, J., of second-degree criminal sexual conduct for engaging in sexual contact with a boy at least thirteen but less than sixteen years of age over whom he was in a position of authority, which he used to coerce the victim to submit. The defendant was sentenced as a second-offense habitual offender and second-offense sexual offender to 60 to 270 months of imprisonment. The defendant appealed.

The Court of Appeals *held*:

1. The prosecution presented sufficient evidence that the defendant was in a position of authority over the complainant and used the position of authority to coerce the complainant into engaging in sexual contact. The prosecution showed that the defendant, as spiritual therapist and teacher of reiki (an ancient healing art) to the complainant, occupied a position of authority and exploited the special vulnerability of a student (i.e., the complainant) to convince the complainant that naked, genital touching was part of the curriculum.

2. The trial court erred in instructing the jury that a finding that the defendant was a reiki instructor amounted to a finding that the defendant was in a position of authority. As the prosecution conceded, this instruction constituted plain error because it took an essential element of the offense away from the jury's determination. However, reversal is not required because the defendant did not show that the error affected his substantial rights and because there was ample evidence that the defendant was in a position of authority over the complainant.

3. The trial court's failure to include in its instructions to the jury a definition of "coerce" did not result in error requiring reversal. The trial court fairly presented to the jury the issues to be tried and sufficiently protected the rights of the defendant by telling the jury that "coerce" is like "make" and stating that the jury could find coercion if the defendant intentionally made the complainant touch the defendant's genitals.

4. The trial court's admission of evidence of the defendant's extramarital affairs does not require reversal. The defendant did not object at trial to the prosecution's introduction of that evidence and, therefore, failed to preserve the issue for appeal. Moreover, the defendant introduced the issue in comments made during his opening statement, offered a witness to support his theory that his jilted lover and the complainant's mother conspired to accuse him of molesting the complainant, and made further comments about the matter during his closing argument. The defendant cannot introduce and use evidence to sustain his theory and then argue on appeal that the evidence was prejudicial and denied him a fair trial.

5. The trial court did not abuse its discretion in admitting evidence of the defendant's twenty-year-old conviction for the sexual assault of a male student while the defendant was a fifth-grade teacher in another state. The evidence was admissible pursuant to MRE 404(b) as proof of a common plan by the defendant in approaching and molesting his victims, was relevant to show that the defendant touched the complainant for the purpose of the defendant's sexual gratification, and was more probative than prejudicial. Furthermore, the trial court gave an appropriate limiting instruction to the jury, admonishing it to consider the evidence only for its proper purpose.

6. The prosecutor improperly vouched for the complainant's credibility during closing argument by stating her opinion that the complainant was honest. However, in the absence of an objection by the defendant at trial, reversal is not warranted because a curative instruction could have removed any taint the comment may have caused and because the trial court specifically instructed the jurors that it was their duty to determine the credibility of witnesses and that the lawyers' statements and arguments should not be considered evidence.

7. The prosecutor, during redirect examination of a police officer, improperly attempted to question the officer about the defendant's invocation of his right to remain silent when arrested for the prior sexual offense. However, because the officer never got to answer the question and the trial court issued a cautionary instruction to the jury, reversal is not required inasmuch as there was no possibility that any error regarding the defendant's right to remain silent contributed to his conviction.

8. Any error that resulted from the prosecutor's elicitation of testimony from the defendant that a prosecution witness was a liar does not require reversal. The error was harmless in view of the defendant's contention that the charge against him was fabricated,

and any undue prejudice could have been cured by a timely objection and curative instruction.

9. The defendant's claim of ineffective assistance of counsel at trial lacks merit. Defense counsel's failure to object to the prosecution's arguments concerning the defendant's position of authority over the complainant did not constitute ineffective assistance. The prosecution was required to prove that the defendant was in a position of authority and therefore could properly make arguments about the issue. Any defense objection to those arguments would have been frivolous. Defense counsel's failure to object to the improper jury instruction regarding position of authority did not constitute ineffective assistance. In view of the fact that the defendant never disputed that he was in a position of authority and the evidence overwhelmingly indicated that he was in a position of authority, the defendant cannot affirmatively demonstrate that but for counsel's failure to object to the instruction, the outcome of the case would have been different such that his conviction should be reversed.

10. The cumulative effect of the claimed errors at trial is not so prejudicial as to warrant a reversal. The evidence of the defendant's guilt was substantial, and the claimed errors did not compromise the defendant's theory of the case. No reasonable juror would have voted for acquittal had the claimed errors not occurred.

11. The record does not support the defendant's claim that the trial court believed it lacked discretion over the maximum sentence. The sentence imposed was proportionate to the seriousness of the circumstances surrounding the offense and the offender.

Affirmed.

1. RAPE — SECOND-DEGREE CRIMINAL SEXUAL CONDUCT — COERCION.

Coercion, for purposes of second-degree criminal sexual conduct involving sexual contact with a victim at least thirteen but less than sixteen years of age over whom the defendant was in a position of authority, which the defendant used to coerce the victim to submit, includes abuse of the position of authority to constrain the victim by subjugation to submit to sexual contact (MCL 750.520c[1][b][iii]; MSA 28.788[3][1][b][iii]).

2. RAPE — SECOND-DEGREE CRIMINAL SEXUAL CONDUCT — POSITION OF AUTHORITY — POSITION OF SPECIAL VULNERABILITY — TEACHER-STUDENT RELATIONSHIP.

A teacher-student relationship places the teacher in a position of authority over the student and places the student in a position of special vulnerability such that any sexual contact by the teacher with the student, if the student is at least thirteen but less than six-

teen years of age, would be second-degree criminal sexual conduct (MCL 750.520c[1][b][iii]; MSA 28.788[3][1][b][iii]).

3. EVIDENCE — OTHER ACTS — APPEAL.

The admission of other acts evidence is reviewed on appeal for abuse of discretion; if an error is found, the defendant has the burden of establishing that, more probably than not, a miscarriage of justice occurred because of the error; reversal is required only where, after an examination of the entire cause, it affirmatively appears more probable than not that the error was outcome determinative (MRE 404[b]).

4. EVIDENCE — OTHER ACTS — ADMISSIBILITY.

Other acts evidence may be admitted if it is offered for a proper purpose under MRE 404(b), it is relevant, and its probative value is not substantially outweighed by unfair prejudice; upon request, a trial court may provide a limiting instruction.

5. CRIMINAL LAW — TRIAL — PROSECUTION WITNESSES — CREDIBILITY.

A prosecutor may not vouch for a witness' credibility or suggest that the government has some special knowledge that a witness will testify truthfully.

6. CRIMINAL LAW — TRIAL — PROSECUTION WITNESSES — CREDIBILITY.

A prosecutor may not ask a defendant to comment on the credibility of prosecution witnesses because a defendant's opinion on such a matter is not probative and credibility determinations are to be made by the trier of fact.

7. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

A defendant seeking to establish a claim of ineffective assistance of counsel must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different; the defendant must overcome the presumption that the challenged action might be considered sound trial strategy, and the deficiency must be so prejudicial as to deprive the defendant of a fair trial.

8. CRIMINAL LAW — TRIAL — CUMULATIVE EFFECT OF ERRORS.

The cumulative effect of several minor errors at trial may warrant reversal of a conviction even where the individual errors would not; to warrant reversal, the effect of the errors must have been so prejudicial as to have denied the defendant a fair trial.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Pros-

ecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*Linda D. Ashford*, for the defendant on appeal.

Before: SAAD, P.J., and HOEKSTRA and MARKEY, JJ.

SAAD, P.J. Defendant appeals as of right his jury trial conviction of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(b)(iii); MSA 28.788(3)(1)(b)(iii). Defendant was sentenced as a second-offense habitual offender, MCL 769.10; MSA 28.1082, and a second-offense sexual offender, MCL 750.520f; MSA 28.788(6), to 60 to 270 months' imprisonment for the conviction. We affirm.

### I. FACTS

This case arises out of an incident that occurred during an alleged spiritual therapy class taught by defendant. In 1995, after receiving a masters degree in counseling and opening his own private counseling practice, defendant began taking courses in reiki, which, according to trial testimony, is an ancient healing art that involves "energy centers" in the body called chakras. Reiki practitioners use various hand positions to activate internal healing powers in their patients. The hand positions used by reiki therapists may involve, but do not require, physical contact with the person undergoing reiki therapy. Defendant passed his reiki classes and became a master reiki teacher and practitioner.

In June 1996, defendant visited the home of Dr. Julian Rowe. While there, he gave psychic readings to complainant's mother. Thereafter, complainant's mother underwent regular counseling with defendant.

In September 1996, defendant taught a reiki class at Rowe's house in which complainant's mother participated. During the class, defendant demonstrated the various reiki hand positions and introduced one "kundalini"[1] hand position. According to trial testimony, kundalini involves the use of hand positions involving genitals to open energy points and to gain enlightenment through sexual energy. Defendant demonstrated the kundalini position on complainant's mother by placing one hand on her genitals and one hand on her stomach. He explained that the position helped direct the energy of the spine.

Complainant's mother attended other reiki classes defendant taught at Rowe's house. She practiced her hand positions on complainant, her fourteen-year-old son, but never used the kundalini position. After seeing positive changes in his mother, complainant became interested in learning reiki himself. Complainant wrote defendant a letter asking if he could attend a reiki class and defendant agreed to become complainant's reiki teacher.

In June 1997, complainant and his mother attended defendant's class at Rowe's house. After the morning class session, defendant asked complainant's mother if he could talk to complainant alone before the afternoon session. Defendant explained that he planned to teach some kundalini positions in the afternoon, and that he did not want complainant to giggle when he taught that portion of the class. Complainant's mother consented and defendant took complainant to an upstairs bedroom and closed the door. According to

---

[1] According to defendant's mysticism "expert," "kundalini" is a Sanskrit term meaning "coiled serpent." The serpent is said to be a very powerful, creative energy source that sits at the base of the spine.

complainant, defendant first explained that he should not laugh during the afternoon session. Then, defendant told complainant, "Everyone's got nuts" and defendant then told complainant to feel defendant's testicles. Amazingly, complainant did so and defendant talked to complainant about sexual energy. Defendant then reclined on the bed and told complainant to place one hand on defendant's testicles and one hand on his stomach. Complainant did so and defendant then placed his hands on complainant to demonstrate the position.

Following the afternoon class, defendant asked complainant if he wanted to learn more and he again took complainant to an upstairs bedroom and closed the door. Defendant talked to complainant about reiki hand positions and then discussed male sexual energy. Defendant asked complainant to take off his pants and underwear and complainant did so. Defendant also removed his own pants and underwear. Defendant then manipulated his own testicles while explaining to complainant that the movement would create healthier semen. Defendant told complainant to try the technique and complainant complied by manipulating defendant's testicles. According to complainant, defendant then lay on the bed and began to masturbate while talking about sexual energy and reiki.[2] Complainant later told his mother what occurred with defendant and he then gave a full statement to the police.

---

[2] Defendant's former reiki teacher and prosecution witness, Kay Russell, testified that genital touching, masturbation, and discussions about sexual energy are improper in the study of reiki.

## II. ANALYSIS

### A. WHAT CONSTITUTES COERCION FOR PURPOSES OF MCL 750.520c(1)(b)(iii); MSA 28.788(3)(1)(b)(iii)?

Defendant says that the prosecutor presented insufficient evidence that he was in a position of authority over complainant and insufficient evidence that he used his position of authority to coerce complainant into engaging in sexual contact. In determining whether sufficient evidence has been presented, we view the evidence in a light most favorable to the prosecution to determine if any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). All conflicts in the evidence are resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).

The relevant portion of the CSC II statute, MCL 750.520c(1)(b)(iii); MSA 28.788(3)(1)(b)(iii), provides:

(1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:

* * *

(b) That other person is at least 13 but less than 16 years of age and any of the following:

* * *

(iii) The actor is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

In *People v Reid*, 233 Mich App 457; 592 NW2d 767 (1999), this Court considered the issue of what constitutes coercion for purposes of the first-degree CSC statute, MCL 750.520b(1)(b)(iii); MSA 28.788(2)(1)(b)(iii).

Here, we address the identical question of what constitutes coercion, but unlike *Reid*, we must answer this question for purposes of the CSC II statute, an issue that has not been reviewed by our courts in a published opinion. We believe that the holding and analysis in *Reid* is persuasive and equally applicable to CSC II.[3] Therefore we similarly hold that a defendant's conduct constitutes coercion where, as here, the defendant abuses his position of authority to constrain a vulnerable victim by subjugation to submit to sexual contact.

In *Reid*, the complainant's father met the defendant at work and confided that his son was having problems in school. *Reid, supra* at 460. The defendant told the complainant's father that he had experience talking to young people as a church counselor and then offered to talk to the complainant about his problems. *Id.* The defendant began spending time with the complainant and even looked after the boy when his parents were at work. *Id.* at 461. The defendant then asked if the complainant could spend the night at the defendant's house to play computer games, and the complainant's parents consented. *Id.* at 462. That night, the defendant slipped vodka into the complainant's beverage and continued to offer him drinks until the complainant became intoxicated.

---

[3] Specifically, MCL 750.520c(1)(b)(iii); MSA 28.788(3)(1)(b)(iii).

*Id.* at 463. Thereafter, the defendant fondled the complainant and engaged him in oral sex. *Id.* at 465.

In analyzing the issue in *Reid*, this Court first observed that "[f]orce or coercion is not limited to physical violence but is instead determined in light of all the circumstances." *Reid, supra* at 468, quoting *People v Brown*, 197 Mich App 448, 450; 495 NW2d 812 (1992). We also find instructive this Court's definition of coercion applied in *People v Premo*, 213 Mich App 406, 410-411; 540 NW2d 715 (1995), which states that "[c]oercion 'may be actual, direct, or positive, as where physical force is used to compel act against one's will, or implied, legal or constructive, as where one party is constrained by subjugation to other to do what his free will would refuse.' " *Id.* at 411, quoting Black's Law Dictionary (5th ed), 234.

In *Reid*, this Court specifically held that coercion by a person in a position of authority does not require a showing of physical violence but can be shown through evidence of the exploitation of a victim's special vulnerability. *Reid, supra* at 472. The Court concluded that the defendant placed himself in a position of acting as a therapist by offering to counsel the complainant about his problems. *Id.* at 470. This Court also found that the defendant spent time with the complainant on the night of the sexual conduct in order to further that counseling relationship and manipulated that role in order to assault the complainant. *Id.* The court observed that the defendant's relationship with the complainant was similar to a teacher-student relationship in which the victim is "in a position of special vulnerability" with the defendant and that the "defendant exploited the special vulnera-

bility attendant to his relationship with the complainant to abuse him sexually." *Id.* at 472.

Here, defendant's challenge to the finding of coercion necessitates an examination of whether he was in a position of authority. Defendant first gained the trust of complainant's mother by acting as her therapist and reiki teacher. Complainant's mother testified that she considered defendant a friend, teacher, and counselor and that she often sought his counseling help. As an outgrowth of this relationship, complainant formally asked defendant if he could take one of defendant's reiki classes and defendant agreed to become complainant's reiki teacher. Defendant, as a master reiki teacher and practitioner, instructed his reiki students in an organized class and controlled the information the students learned. This Court has held that a teacher is in a position of authority over a student as a matter of law. *Premo, supra* at 411.

The mere fact that defendant taught in a nontraditional classroom setting does not mean that his position was any less authoritative than in a traditional teacher-student relationship. In this connection, we find instructive the following observations by this Court in *Reid, supra* at 472:

> In this regard, a common feature of the situation with the teacher in *Premo* and the psychotherapist in [*People v Regts*, 219 Mich App 294; 555 NW2d 896 (1996)] is that the victims were in a position of special vulnerability with respect to the defendants. Similarly, in this case, a reasonable jury could have found that defendant exploited the special vulnerability attendant to his relationship with the complainant to abuse him sexually. While it is true that defendant in this case did not hold a formal position, such as being a school teacher, we find that inconclusive. There certainly was sufficient evidence to support a finding that

defendant was placed in a substantially similar position of practical authority over the complainant. The defendant teacher in *Premo* occupied a position in which he was generally charged with control and supervision of students at his high school. Here, there was evidence that the complainant's parents had entrusted the complainant to defendant's care. Further, viewing the evidence in a light most favorable to the prosecution, the complainant was alone with defendant at a location where the complainant was isolated from others and subject to the general control of defendant. These circumstances further support our conclusion that there was sufficient evidence that defendant used a position of authority to coerce the complainant to participate in two acts of fellatio.

As noted above, the characteristic dominant and subordinate roles in any teacher-student relationship places the student in a position of special vulnerability. We find the circumstances of this case particularly illustrative of this point. Complainant was the only young adolescent in a class taught and attended by adults. Given his age, the unconventional nature of the "curriculum," and the trust defendant fostered with complainant's mother, complainant was highly susceptible to abuse. Under these circumstances, we find that defendant exploited and abused his position of authority to compel an extremely vulnerable youth to engage in sexual contact. This clearly constitutes coercion for purposes of this section of the CSC II statute.

Defendant gained the trust of complainant's mother so that she approved not only of defendant teaching her son, but allowed defendant to be alone with him. Acting in his capacity as a teacher and disciplinarian, defendant twice separated complainant from the rest of the students. First, defendant requested complainant's mother's permission to discuss the material he

planned to teach during the afternoon session so that complainant would not disrupt the class with inappropriate laughter. Following the afternoon class, defendant again separated complainant in order to teach him more hand position techniques. After isolating complainant, defendant continued his dominant role by instructing complainant that he could further his knowledge of reiki by engaging in sexual contact with defendant. Thus, defendant took advantage of complainant's mother's extreme naiveté and complainant's extreme vulnerability and manipulated his own role as a teacher to convince the boy that naked, genital touching was part of the class curriculum. Again, this constitutes coercion under the CSC II statute.

Our ruling is also consistent with cases from other states interpreting similar statutes. In *State v Carter*, 140 NH 114; 663 A2d 101 (1995), the Supreme Court of New Hampshire addressed the issue of what constitutes coercion by a teacher for purposes of its sexual assault statute. In *Carter*, the defendant was a junior high school teacher and hall monitor and he taught the complainant's English class before the assaults. *Id.* at 116. The complainant moved on to high school, which was in a building attached to the junior high. *Id.* The sexual acts took place after the complainant moved to the high school. *Id.* The Court concluded that the defendant remained in a position of authority over the complainant because of the proximity of the schools and on the basis of his involvement in student activities. *Id.* at 116-117. The Court observed that the defendant still "had the right to expect obedience from a high school student," even though he no longer taught the complainant's classes. *Id.* at 117. Accordingly, the Court found that

the defendant used his position of authority to coerce the complainant to submit to the sexual contact. *Id.* The Court concluded that, in a situation involving an authority figure, coercion can include "subtle persuasion" or "undue influence and psychological manipulation." *Id.* at 117, quoting *State v Collins*, 129 NH 488, 490; 529 A2d 945 (1987).

We find that (1) defendant's behavior toward complainant constituted coercion under CSC II and (2) that there was ample evidence for the jury to conclude, beyond a reasonable doubt, that defendant manipulated his position of authority as complainant's teacher to coerce complainant by subjugation to engage in sexual contact.[4]

---

[4] Defendant also raises a claim that the second-degree CSC statute, MCL 750.520c(1)(b)(iii); MSA 28.788(3)(1)(b)(iii), is unconstitutionally vague because it does not define "position of authority" and, therefore, does not reasonably inform persons what conduct is prohibited and is so indefinite that it allows the finder of fact unlimited discretion. This Court reviews de novo a claim that a statute is unconstitutionally vague. *People v Noble*, 238 Mich App 647, 651; 608 NW2d 123 (1999).

We first note that defendant did not raise the issue before the trial court and, therefore, failed to preserve the issue for appeal. Secondly, defendant fails to argue how the statute failed to notify him that his conduct was criminal under the facts of this case. Rather, defendant presents only hypothetical situations in which the statute might be susceptible to misinterpretation.

A claim that a statute is impermissibly vague "must be examined in the light of the facts of the case at hand." *People v Howell*, 396 Mich 16, 21; 238 NW2d 148 (1976), citing *United States v Nat'l Dairy Products Corp*, 372 US 29; 83 S Ct 594; 9 L Ed 2d 561 (1963). Further, "[w]hen a defendant's vagueness challenge does not implicate First Amendment freedoms, the constitutionality of the statute in question must be examined . . . without concern for the hypothetical rights of others." *People v Vronko*, 228 Mich App 649, 652; 579 NW2d 138 (1998). Therefore, "[t]he proper inquiry is not whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct allegedly proscribed in this case." *Id.*

Defendant failed to raise any argument on appeal that the statute is unconstitutionally vague with regard to the facts of this case and defendant's specific conduct. We have long held that where a party fails to brief

B. JURY INSTRUCTIONS

Defendant contends that the trial court erred in giving the jury the following instruction:

> The Defendant is charged with the crime of second degree criminal sexual conduct. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> *       *       *
>
> Fourth, *that at the time of the alleged act, the Defendant was in a position of authority over* [the complainant], *that is, a teacher of reiki . . . .*" [Emphasis added.]

Because defendant did not object to the jury instruction at trial and, therefore, failed to preserve the issue for appeal, we review the issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 766-767; 597 NW2d 130 (1999). This instruction informed the jury that a finding that defendant was a reiki instructor amounted to a finding that defendant was in a position of authority. The prosecutor concedes that this instruction constituted plain error because it took an essential element of the offense away from the jury's determination. *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975).

However, defendant has not shown the requisite prejudice necessary to warrant reversal. Defendant raises no argument that, absent the erroneous instruction, jurors would have concluded that defendant was

the merits of an allegation of error, the issue is deemed abandoned by this Court. *People v Kent*, 194 Mich App 206, 210; 486 NW2d 110 (1992). Accordingly, we need not reach the merits of defendant's unpreserved, hypothetical claim because it is irrelevant to a vagueness inquiry in this case.

not in a position of authority over complainant. Rather, defendant makes a general argument that, without the instruction, a juror could have concluded that defendant did not *use* his position of authority to *coerce* complainant into engaging in the sexual contact. Thus, defendant's argument does not address the substance of the error and, in fact, appears to concede that reasonable jurors would conclude that he *was* in a position of authority, but not that he used that position as alleged.

Because defendant has not shown that the error affected his substantial rights and because we find there was ample evidence that he was in a position of authority over complainant, the trial court's instructional error does not require reversal.

Defendant further claims the trial court erred in failing to properly define "coerce" during jury instructions. This Court will not find error if the jury instructions "fairly presented to the jury the issues to be tried and sufficiently protected the rights of the defendant." *People v Caulley*, 197 Mich App 177, 184; 494 NW2d 853 (1992). Defendant has not presented any authority to support his claim that such an instruction was necessary or that failure to define the term in the jury instructions warrants reversal. During its instructions, the trial court likened the word "coerce" to the word "made," stating that the jury could find coercion if defendant intentionally made complainant touch his genital area. We find that the trial court's use of the word "made" is clear and that it fairly presented the issue to be tried. We also note that, while other parts of the CSC statute define coercion specifically, MCL 750.520c(1)(b)(iii); MSA 28.788(3)(1)(b)(iii) does not. Therefore, we presume

the word is subject to ordinary comprehension and, under the fact of this case, the word is self-explanatory. No error requiring reversal occurred as a result of the trial court's failure "to define a term which is generally familiar to lay persons and is susceptible of ordinary comprehension." *People v Cousins*, 139 Mich App 583, 593; 363 NW2d 285 (1984).[5]

### C. EVIDENCE OF DEFENDANT'S EXTRAMARITAL AFFAIRS AND PRIOR BAD ACTS

Defendant next claims several errors regarding the admission of evidence at trial. We find that only two of defendant's claims merit discussion.

Defendant contends that the trial court improperly admitted evidence of defendant's extramarital affairs. We review the admission of evidence for an abuse of discretion. *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). Not only did defendant fail to object at trial to any testimony regarding his affairs, thereby failing to preserve this issue for appeal, but defendant also raised the issue himself during his opening statement. In fact, defendant's theory throughout trial was that a jilted lover, Lisa Kolberg, conspired with complainant's mother to accuse defendant of molesting complainant. The trial record also

---

[5] Defendant also argues that the trial court erred in failing to give a jury instruction defining "position of authority." We disagree. The phrase "position of authority" is self-explanatory and is readily comprehended by ordinary persons. We also note that defendant did not contest that he was in a position of authority during trial, so the absence of an instruction defining the phrase was not critical to his theory of the case. And, as we concluded above, the evidence clearly showed that defendant was in a position of authority over complainant and defendant raises no argument that a specific definition would have affected the outcome of the case. Thus, defendant's claim is without merit.

reveals that defendant called Kolberg as a defense witness in order to further his conspiracy theory and he discussed the issue extensively during closing argument. Thus, any testimony elicited by the prosecutor regarding this issue was relevant to the issues raised by defendant. A defendant will not be heard to introduce and use evidence to sustain his theory at trial and then argue on appeal that the evidence was prejudicial and denied him a fair trial. *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). Defendant's unpreserved claim, therefore, does not warrant reversal.

Defendant also contends that the trial court erred in admitting evidence of defendant's prior sexual assault conviction. This Court reviews the admission of similar acts evidence for an abuse of discretion. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). If an error is found, defendant has the burden of establishing that, more probably than not, a miscarriage of justice occurred because of the error. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). No reversal is required for a preserved, nonconstitutional error "unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Id.* at 496.

Pursuant to MRE 404(b), evidence of other crimes or wrongs "is not admissible to prove the character of a person in order to show action in conformity therewith." However, other acts evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material."

MRE 404(b). Other acts evidence must be offered for a proper purpose under the rule, the evidence must be relevant, and its probative value must not be substantially outweighed by unfair prejudice. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Further, the trial court may, upon request, provide a limiting instruction to the jury. *Id.*

The prosecutor moved to admit evidence that defendant engaged in the sexual penetration of a student in 1976, when defendant was a fifth-grade teacher in Illinois. The prosecutor argued that the evidence was probative of defendant's common scheme or plan in victimizing his students for his own sexual gratification. The prosecutor also argued that the evidence was relevant to show that defendant engaged in the sexual contact with complainant for a sexual purpose, an issue contested by defendant throughout the trial. In a lengthy opinion and order, the trial court ruled that the similar acts evidence was admissible and agreed to give a limiting instruction to the jury.

We find that, under the facts of this case, the trial court did not abuse its discretion in admitting the similar acts evidence. The evidence met all four prongs of the test set out in *VanderVliet*. The prosecutor offered the evidence to demonstrate a common plan by defendant in approaching and molesting his victims. Defendant's prior victim and complainant were both pubescent boys at the time of the incidents, defendant was acting as a teacher when he approached his victims, defendant ingratiated himself with the families of both victims, he isolated both boys to initiate sexual contact and both assaults

involved masturbation and discussions about masturbation. Thus, the evidence at issue was relevant to show defendant's common scheme or plan.

The similar acts evidence was relevant to show that defendant touched complainant for the purpose of his own sexual gratification. Defendant's purpose in approaching complainant was a material issue at trial because defendant maintained that he was merely showing complainant a therapy technique and denied that the incident involved his own sexual pleasure. *People v Ayres*, 239 Mich App 8, 24; 608 NW2d 132 (1999). Further, the evidence was relevant to rebut defendant's theory that Kolberg and complainant's mother fabricated the incidents. For these reasons, we also find that the probative value of the similar acts evidence is not substantially outweighed by the risk of unfair prejudice. And, although there was a twenty-year gap between defendant's prior conviction and this incident, the evidence was highly probative of defendant's common scheme because each step of defendant's prior conduct in approaching and isolating his victim mirrored his conduct in this case. Furthermore, the trial court gave an appropriate limiting instruction to the jury, admonishing it to consider the evidence only for its proper purpose.

Further, were we to find the evidence inadmissible, it is not likely that any error in the admission of this evidence was outcome determinative. *Lukity, supra* at 496. Not only did complainant testify in detail about the incidents, defendant admitted that he (1) isolated complainant, (2) discussed masturbation with complainant, (3) asked complainant to take off his pants and underwear, and (4) stimulated his own penis in front of complainant. Further, expert testi-

mony showed that the "techniques" defendant claimed he was teaching complainant were not part of reiki training and were inappropriate. In short, the evidence of defendant's guilt was substantial and we cannot conclude that, absent the prior acts evidence, the outcome of this case would have been different.

### D. PROSECUTORIAL MISCONDUCT

Defendant raises eight separate claims of prosecutorial misconduct, most of which we find meritless.[6]

---

[6] We find no evidence in the record showing that the prosecutor injected the issue of defendant's homosexuality into the trial. Rather, defendant elicited testimony from his own marriage counselor regarding his sexual orientation. Further, as discussed above, defendant raised the issue of his extramarital relationship with Kolberg to pursue his theory that Kolberg conspired with complainant's mother to fabricate the charges in this case. Therefore, any details the prosecutor elicited about defendant's relationship with Kolberg were relevant to rebut defendant's theory at trial. It is disingenuous for defendant to now claim that the prosecutor engaged in misconduct by exploring an issue raised by defendant.

With regard to other questions about defendant's conduct, defendant did not object when the prosecutor asked defendant about his behavior during therapy sessions with Kolberg's husband, Don McAvinchey. Defendant testified that he did not incorporate the touching of genitals into his therapy practice and, in an effort to rebut that testimony, the prosecutor simply asked defendant about a statement McAvinchey wrote regarding certain incidents that occurred during his therapy sessions with defendant. Defendant responded by stating that any reference McAvinchey made to nudity, sexual contact, oral sex, and masturbation during his therapy sessions was a lie. The prosecutor elicited this testimony to rebut defendant's contention that complainant fabricated his story about all contact of a sexual nature. Further, the cross-examination was properly geared toward rebutting defendant's testimony that he never used improper methods in teaching his students or counseling his patients.

We also find that the prosecutor did not present an improper civic duty argument to the jury and, therefore, did not inject issues broader than defendant's guilt or innocence by presenting such an improper civic duty argument. During closing arguments, the prosecutor argued from the relevant facts and took pains to separate this case from the evidence of defendant's prior conviction. Further, the prosecutor did not persuade the jurors to suspend their powers of judgment by asking them to protect

Defendant contends that the prosecutor improperly vouched for the complainant's credibility. A prosecutor is prohibited from vouching for a witness' credibility or suggesting that the government has some special knowledge that a witness will testify truthfully. *People v Ramsdell*, 230 Mich App 386, 404; 585 NW2d 1 (1998). During her closing argument, the prosecutor stated:

> Number one, that the Defendant intentionally made [complainant] touch his genitals or the clothing covering that area. And on that element, Ladies and Gentlemen, you have the word of [complainant]. You have his honest, painful, straightforward testimony about what this man made him do—and that is enough.

We find that the prosecutor's comment constituted improper vouching. The prosecutor should not have stated her opinion regarding complainant's honesty. However, defendant did not object to the misconduct and, therefore, "appellate review is precluded unless a curative instruction could not have eliminated possible prejudice or failure to consider the issue would result in a miscarriage of justice." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). A prompt, curative instruction could have removed any taint the prosecutor's brief comment may have caused. Further, the trial court specifically instructed the jurors that it was their duty to determine the credibility of

_____

complainant; the prosecutor merely responded to defendant's argument that the jurors should not be wrong about their conviction. Generally, "[p]rosecutors are accorded great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citations omitted). Further, prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *Id.* Thus, we find no misconduct with regard to this issue.

witnesses and that the lawyers' statements and arguments should not be considered evidence. Thus, even though the prosecutor's comment was improper, we do not find that it warrants reversal.

Defendant further claims that the prosecutor infringed on defendant's constitutional right to remain silent while questioning a police officer in this case, Officer Geoffrey Flohr. During cross-examination, defendant elicited testimony from Officer Flohr that, when defendant was arrested for sexual misconduct in Illinois, he waived extradition, consulted a lawyer, and "lawyered-up," meaning that he asserted his right to remain silent. During the prosecutor's redirect examination, she asked the meaning of "lawyered up." After Officer Flohr explained the term, the following exchange occurred:

> *Prosecutor.* So he chose not to say anything to you?
> *Officer Flohr.* Yeah.
> *Prosecutor.* He didn't say, no, I never did this?
> *The Court.* Well, Ms. Rezmierski (prosecutor)—
> *Defense Counsel.* That is patently improper.
> *The Court.* That is patently improper testimony. You're trying to elicit improper testimony. It's improper questioning. The jury will disregard that.
> *Prosecutor.* Your Honor, it's the People's position he opened the door.
> *The Court.* Ma'am, you heard me. The defendant has a right to remain silent. He's been provided with that right to remain silent as I advised you at the beginning. For her to attempt to breach that is entirely improper. One more comment and you are in contempt of court.

As the trial court recognized, it was improper for the prosecutor to question Flohr regarding defendant's invocation of his right to counsel during his

prior arrest. Even though defendant raised the issue of his choice to remain silent after his arrest, this did not open the door for the prosecutor to elicit details about whether defendant denied the allegations against him.

Although the prosecutor's questions were improper, automatic reversal is not required for this nonstructural defect. See *People v Anderson (After Remand)*, 446 Mich 392, 405; 521 NW2d 538 (1994). Rather, we review the issue to determine if the beneficiary of the error can show that the error is harmless beyond a reasonable doubt. *Id.* at 405-406. To make this showing, there must be no reasonable possibility that the error contributed to the conviction. *Id.*

Here, Officer Flohr never answered the prosecutor's improper question and the trial court immediately issued a cautionary instruction to the jury. Under these circumstances, we find no possibility that any error with regard to defendant's right to remain silent contributed to his conviction, particularly because the trial court acted swiftly by issuing an appropriate cautionary instruction and because defendant testified fully about the events at trial.

Defendant also says that the prosecutor improperly elicited testimony from defendant that Don McAvinchey was a liar. It is not proper "for a prosecutor to ask a defendant to comment on the credibility of prosecution witnesses since a defendant's opinion on such a matter is not probative and credibility determinations are to be made by the trier of fact." *People v Loyer*, 169 Mich App 105, 117; 425 NW2d 714 (1988), citing *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). Errors in this regard are reviewed under a harmless error analysis. *Loyer, supra* at 118.

Although the prosecutor's question required defendant to call McAvinchey a liar, we do not find that defendant was harmed by the error. Defendant maintained during trial that complainant's mother and Kolberg, McAvinchey's wife, were liars and that they conspired to have defendant arrested. In light of defendant's consistent allegations in this regard, we do not find that defendant was harmed by questioning the veracity of one other witness. Moreover, defendant fails to articulate any way in which he was harmed by the prosecutor's question. Because any undue prejudice could have been cured by a timely objection and curative instruction, defendant's claim does not warrant reversal.

### E. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also raises several claims of ineffective assistance of counsel. Because defendant did not move for a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), this Court's review is limited to errors apparent on the record. *People v Williams*, 223 Mich App 409, 414; 566 NW2d 649 (1997).

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for defense counsel's errors, there was a reasonable probability that the result of the proceeding would have been different. *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994). A defendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial. *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). The defendant must also overcome the presumption that the challenged action might be con-

sidered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant contends that defense counsel was ineffective for failing to object to the arguments by the prosecutor and jury instructions regarding defendant's occupying a position of authority over complainant. The prosecutor was required to prove that defendant was in a position of authority pursuant to MCL 750.520c(1)(b)(iii); MSA 28.788(3)(1)(b)(iii) and the prosecutor's arguments in that regard were proper. Therefore, any objection to those comments by defense counsel would have been frivolous. Obviously, defense counsel is not required to make frivolous or meritless motions, *People v Darden*, 230 Mich App 597, 604-605; 585 NW2d 27 (1998), or objections, *People v Torres (On Remand)*, 222 Mich App 411, 425; 564 NW2d 149 (1997).

Furthermore, while counsel should have objected to the improper jury instruction on "position of authority," defendant never disputed that he was in a position of authority over complainant and no reasonable juror would have concluded that he was not in a position of authority. To the contrary, the evidence was overwhelming that he was in a position of authority at the time the incidents took place. Thus, defendant cannot affirmatively demonstrate that but for his counsel's error in failing to object to the improper instruction, the outcome of the case would have been different. Therefore, any error by counsel in this regard does not require reversal.[7]

---

[7] We find that defendant's other claims of ineffective assistance of counsel involve matters of trial strategy. This Court will not second-guess counsel regarding matters of trial strategy and, "even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence

## F. CUMULATIVE EFFECT OF ERRORS

Defendant contends that the cumulative effect of the errors asserted above were prejudicial to his case. This Court reviews this issue to determine if the combination of alleged errors denied defendant a fair trial. *People v Smith*, 363 Mich 157, 164; 108 NW2d 751 (1961); see also *People v Duff*, 165 Mich App 530, 539; 419 NW2d 600 (1987) (where this Court stated that the test is not whether there were irregularities

with the benefit of hindsight." *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999).

Defendant contends that defense counsel was ineffective for failing to object to the prosecutor's questions regarding McAvinchey's written police statement. However, defendant maintained throughout trial that the evidence against him was fabricated and was part of a conspiracy and that police participated in that conspiracy. Defendant specifically used McAvinchey's statements to show that certain allegations were not corroborated in the police report. Thus, defendant has not overcome the strong presumption that defense counsel's failure to object constituted sound trial strategy. *Rice, supra* at 444.

Defendant also argues that defense counsel was ineffective for failing to object to references to pedophilia and for not filing a motion in limine to preclude evidence of defendant's homosexuality and references to other possible victims. Defense counsel elicited testimony from both defendant and his own therapist that defendant was not classified as a pedophile. The questions were part of defense counsel's attempt to separate defendant from pedophiles in order to argue that he was not a repeat offender. Moreover, defendant himself raised the issue of homosexuality in order to convince the jury that he did not possess homosexual tendencies. Defendant raised this issue as part of his trial strategy, to counter allegations that he touched complainant for his own sexual gratification. Further, in order to bolster his theory that Kolberg and complainant's mother fabricated the allegations in this case, defense counsel himself elicited testimony that no other victims ever came forward with claims against defendant.

Finally, defense counsel raised the issue of defendant's prior conviction to show that defendant would have admitted responsibility in this case, as he did in the last, if he had actually engaged in the alleged wrongful conduct. In addition, defendant introduced evidence of his probation and therapy to show that he has been rehabilitated. Again, defense counsel's actions constituted sound trial strategy. Defendant's claims that defense counsel was ineffective for the above reasons are, therefore, without merit.

at trial but whether defendant was denied a fair trial because of the irregularities).

The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal. *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999); *People v Miller (After Remand)*, 211 Mich App 30, 34; 535 NW2d 518 (1995). In order to reverse on the grounds of cumulative error, the errors at issue must be of consequence. *Cooper, supra* at 659-660. In other words, the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial. *People v Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999).

We find that the cumulative effect of the errors discussed above did not deny defendant a fair trial. *Id.* The evidence of defendant's guilt was substantial. Complainant's testimony was unequivocal and defendant admitted most of the events complainant described. Defendant denied the actual physical contacts, but he apologized for his conduct on tape and other witnesses verified complainant's story. Furthermore, ample expert testimony established that reiki training does not involve the "techniques" defendant claimed he was teaching complainant. Because of the strong evidence of defendant's guilt and because the claimed errors did not compromise defendant's theory of the case, we find that no reasonable juror would have voted for acquittal if these errors did not occur. Thus, we find that the cumulative effect of the errors do not require reversal.

### G. SENTENCING

Defendant contends that his maximum 22½-year sentence was invalid because the trial court failed to

articulate on the record that it had discretion when imposing the maximum sentence. Contrary to defendant's assertion, there is no legal requirement that a trial court state on the record that it understands it has discretion and is utilizing that discretion. See *People v Beneson*, 192 Mich App 469, 471; 481 NW2d 799 (1992). Rather, absent clear evidence that the sentencing court incorrectly believed that it lacked discretion, the presumption that a trial court knows the law must prevail. *People v Alexander*, 234 Mich App 665, 675; 599 NW2d 749 (1999). The trial court articulated its reasons for imposing defendant's sentence and nothing in the record demonstrates that the trial court believed it lacked discretion when it sentenced defendant to 22½ years as a maximum sentence. Rather, the trial court's comments indicate that it was using its discretion to sentence defendant to the maximum allowed. Therefore, there is no clear evidence to support defendant's contention that the trial court believed it lacked discretion.

Defendant also claims that his sentence was disproportionate. We review the proportionality of a defendant's sentence for an abuse of discretion. *People v Crawford*, 232 Mich App 608, 621; 591 NW2d 669 (1998). A sentence constitutes an abuse of discretion if it is disproportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Milbourn*, 435 Mich 630, 635; 461 NW2d 1 (1990). Specifically, defendant claims that he should not be sentenced more severely than the maximum allowed for manslaughter because his crime was minor and nonviolent. We will not review the proportionality of defendant's sentence by comparing it to sentences for other, unrelated crimes. Rather, we

review a defendant's sentence to determine if it was proportionate to the seriousness of the circumstances surrounding the offense and the offender. Here, the trial court recognized that defendant isolated complainant in a calculating, manipulative manner and perversely abused his authority over an extremely vulnerable youth to engage in sexual contact. Under these circumstances and on the basis of defendant's history, we reject defendant's argument and find the trial court's sentence quite appropriate.

Affirmed.