*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* COOK, Minors.

UNPUBLISHED
May 14, 2019

Nos. 345383 and 345384
Kalkaska Circuit Court
Family Division
LC No. 17-004490-NA

Before: GLEICHER, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother (Docket No. 345383) and respondent-father (Docket No. 345384) each appeal by right the trial court's order terminating their parental rights to their two children, MC and JC. The children were 17 and 15 years old at the time of the trial court's order. Finding no error requiring reversal, we affirm.

## I. FACTS

During the summer of 2017, while at summer camp, MC disclosed to a camp counselor that respondent-father had been inappropriately touching her and had digitally penetrated her over the previous seven years. A forensic interview was conducted, and MC again disclosed the sexual abuse. Petitioner filed a petition for removal and requested termination at the initial dispositional hearing. JC subsequently made similar disclosures.

At the adjudication trial, an investigator for Child Protective Services (CPS), testified regarding a prior 2012 CPS investigation during which both children reported that respondent-father had inappropriately touched their genitalia while bathing them. They were 9 and 11 years old at the time. Both girls originally claimed that respondent-father had touched their "privates" and that it made them uncomfortable. However, they then recanted and said that they were playing in the bathtub instead of cleaning themselves, and that respondent-father had to step in and ensure that they were bathing properly. The investigator ultimately concluded that there was insufficient evidence to proceed with the case, and no petition was filed. At that time, the investigator advised respondents that it was inappropriate to bathe the children considering their ages.

-1-

MC testified that respondent-father began sexually abusing her when she was seven years old. The abuse began with touching over the clothes, and it happened about twice a week. She stated that the abuse occurred in many of the rooms of the house, including the bedrooms, living room, and bathroom. The abuse progressed to touching under her clothing when MC was between the ages of 12 to 14. When MC was 13 or 14 years old, respondent-father began digitally penetrating her vagina. The sexual abuse continued until MC was 16 years old, at which time she was removed from the home. MC testified that respondent-mother witnessed one incident of abuse in 2012 or 2013 that occurred in the living room of the family home, but respondent-mother left the room and did nothing to stop the abuse. The following day, CPS came to the home for an unrelated incident involving JC. MC testified that respondent-mother told her not to say anything about the sexual abuse to the CPS investigator. She testified that the most recent incident of abuse occurred the night before she was to leave for summer camp when she was 16 years old.

Both children also testified that respondents took them to an optometrist when they were young. They claimed that they were told that they needed glasses, but that respondent-father refused to get them. MC testified that upon being taken to an optometrist by her foster family, she learned that she was "legally blind" without glasses. JC testified that she was also "legally blind," and the optometrist told her that her vision would not have been as bad if respondents had purchased glasses for her sooner.

JC testified that respondent-father began sexually abusing her when she was two years old. She claimed that he touched her inappropriately and that he had hit her. JC testified that he would touch her on her chest and vagina while she was in the bathtub, always using his hands and not in a way that indicated he was bathing her. JC claimed that the only time she could remember respondent-father not abusing her was when they went on vacation to Florida. She did not disclose the abuse to anyone until she disclosed it to her foster parents. She explained that she was afraid that respondent-father would find out and hurt her.

Respondent-mother opined that MC and JC were lying about their allegations of sexual abuse by respondent-father. She claimed that she would have known if he was abusing the children. She denied ever walking in on respondent-father abusing MC. She stated that if he were actually abusing the children, then she would have removed them from the situation.

Dr. Wayne Simmons testified as an expert in "general human psychology, child psychology, and performing psychological evaluations and forensic interviews." He opined that the children had decreased credibility because of multiple lies that they had told and the methods by which they disclosed the abuse, i.e., MC only disclosed after the camp counselor who she looked up to revealed sexual abuse in her past, and JC only disclosed after her first interview and after living with foster parents and her sister. However, Dr. Simmons stated that he could not know or form an opinion about whether the girls were actually lying.

The jury found that one or more of the allegations in the petition were proven for both respondents and both children. Therefore, the trial court took jurisdiction over the children.

The trial court then held the initial dispositional and termination hearing. Timothy Strauss, who testified as an expert in clinical psychology, had performed a psychological

evaluation on MC. Strauss diagnosed MC with post-traumatic stress disorder (PTSD), major depression with anxious features, and dependent and avoidant personality traits. Strauss stated that there were no results from MC's testing that indicated that she was lying. Strauss noted that MC indicated that she had not had contact with respondents for nine months and preferred not to have any contact. However, Strauss declined to give a recommendation regarding whether or not MC should be returned to respondents' care. He nevertheless opined that it "probably wouldn't be helpful to have a lot [of] contact with her family."

Dr. Erlinda Mercado, who testified as an expert in psychiatry, had performed a psychiatric evaluation of JC. Dr. Mercado diagnosed JC with major recurring depression and chronic PTSD. She stated that "chronic" meant that JC had experienced trauma "for some time" and that trauma could hypothetically include sexual abuse. Dr. Mercado indicated that JC reported suicidal thoughts and at least two attempts at suicide. She also stated that there was nothing to indicate that JC was lying, and opined that there could be a risk of harm if JC were returned to respondents' care because her fears of returning home could cause her to attempt suicide again.

Jamila Lamb, who was qualified as an expert witness as a licensed psychologist, had met with JC twice a week since March 5, 2018. JC discussed sexual abuse by respondent-father during those sessions and indicated that she did not want to return home. Lamb opined that it was not in JC's best interests to return to respondents' home because it could cause her to self-harm. Lamb believed that JC was being truthful, but Lamb could not be certain.

Dr. Rosalynn Moten, a licensed clinical psychologist who was qualified as an expert, had performed a psychological evaluation on JC on June 27, 2018. She indicated that JC presented with issues of depression and "extremely low range of functioning with a full scale of 69". That meant that JC fell below the "2-percentile range for intellectual functioning." Dr. Moten indicated that JC became overwhelmed by negative emotions when recalling her traumas and history of sexual abuse. She stated that JC's response to recalling trauma was common amongst those who experienced trauma. She also opined that JC's PTSD could be related to sexual abuse.

The foster-care case manager testified that both respondents were ordered to complete psychological evaluations, but neither did so. She also indicated that, at some point, it was reported to the CPS investigator that the children were threatening to lie to the trial court in order to get the foster mother in trouble so that they could be transferred to a different foster home.

Both respondents asserted their Fifth Amendment right not to testify, despite the trial court informing them that their assertions could be used against them. Thereafter, the trial court issued a written opinion terminating respondent-mother's parental rights under MCL 712A.19b(3)(b)(ii) and (j), and terminating respondent-father's parental rights under MCL 712A.19b(3)(b)(i), (j), (k)(ii), and (k)(ix). The trial court also found that termination was in the best interests of the children.

## II. RAPE-SHIELD STATUTE

On appeal, respondents argue that the trial court erred by prohibiting them from questioning MC about statements she made regarding her ex-boyfriend keeping her as a sex slave. We disagree.

"A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo." *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014). "An abuse of discretion occurs when a trial court's decision is not within the range of reasonable and principled outcomes." *Sys Soft Techs v Artemis Techs*, 301 Mich App 642, 650; 837 NW2d 449 (2013) (citation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). Issues of statutory construction are issues of law that we review de novo. *County of Wayne v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004).

Respondents argue that the trial court excluded the evidence pursuant to the rape-shield statute, MCL 750.520j. We disagree with that interpretation of the record. The trial court entertained argument by the parties outside the presence of the jury regarding admissibility of MC's alleged statement, during which the rape-shield statute was discussed. However, it is clear from the record that the trial court's ruling was ultimately based on respondents' inability to provide an offer of proof that the statement was, in fact, a lie. Therefore, the trial court's ruling appears to have effectively been that MC's statement was not relevant under MRE 402, or was substantially more unfairly prejudicial than probative under MRE 403. We do not find that ruling to be an abuse of discretion under the circumstances.

Furthermore, respondents were able to attack MC's credibility through other lines of questioning, other admissible evidence, and other witness testimony. In particular, MC was cross-examined regarding her claims that she did not have certain social media accounts, despite the admission into evidence of several photographs of MC from those online profiles which she appeared to have created. Additionally, the testimony of Dr. Simmons indicated that MC had decreased credibility and reliability because of the many lies that she had told. Thus, we conclude that, "based on review of the entire record, it is more probable than not that the error was not outcome determinative." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 717; 922 NW2d 662 (2018).

## III. PETITION

Next, respondents both argue that the trial court erred when it read the allegations in the petition verbatim to the jury venire. The petition recited that MC "credibly disclosed" the sexual abuse. We review de novo constitutional issues and issues of procedure under the court rules. *In re VanDalen*, 293 Mich App 120, 131-132; 809 NW2d 412 (2011).

In the context of a child protective proceeding, an adjudication trial is defined, in relevant part, as "the fact-finding adjudication of an authorized petition to determine if the minor comes within the jurisdiction of the court." MCR 3.903(A)(27). As part of the adjudication trial, the trial court is required to read the allegations in the petition, unless waived. MCR 3.972(B)(2). Neither respondent waived the reading of the petition. Accordingly, the trial court complied with the court rule. Although the allegations in the petition included statements that MC had credibly disclosed the sexual abuse by respondent-father, we conclude that the trial court did not err in adhering to the court rules by reading the allegations in the petition.

## IV. VERDICT FORM

Next, both respondents argue that they were prejudiced as a result of an improper jury verdict form. In particular, respondent-mother argues that the verdict form was improper because the jury was not required to state which specific statutory ground it found proven in order to give the trial court jurisdiction. Respondent-father argues that the verdict form was improper because it provided the option for finding that a statutory ground was proven before providing the option that a statutory ground was not proven. We disagree with both arguments.

We review de novo claims of instructional error, including claims that a verdict form was erroneous. *In re VanDalen*, 293 Mich App at 133. "Instructional error warrants reversal if it resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice." *Ward v CONRAIL*, 472 Mich 77, 84; 693 NW2d 366 (2005) (quotation marks and citation omitted). MCR 3.972(E) states, "In a child protective proceeding, the verdict must be whether one or more of the statutory grounds alleged in the petition have been proven." Moreover, "there is no requirement that the jurors must reach a consensus regarding which specific statutory grounds supported jurisdiction." *In re VanDalen*, 293 Mich App at 134. "If, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury, no error requiring reversal occurs. Reversal is not warranted when the instructional error did not affect the outcome of the trial." *Id* at 133. (quotation marks and citations omitted). A requested instruction need not be given if it would neither add to an otherwise balanced and fair jury charge nor enhance the jury's ability to decide the case intelligently, fairly and impartially. *Johnson v Corbet*, 423 Mich 304, 327; 377 NW2d 713 (1985).

For both respondents and both children, the jury found that "one or more of the statutory grounds alleged in the Petition have been proven." This finding complied with the requirements of the Michigan Court Rules and caselaw. Contrary to respondent-mother's assertion, the jury was not required to state the specific statutory ground under which it granted the trial court jurisdiction. The verdict form was proper in this regard, and respondent-mother's argument lacks merit.

Regarding respondent-father's argument, the trial court instructed the jury that there were two options for each child and each parent on the verdict forms—either a statutory ground was proven or it was not. The applicable law was "adequately and fairly presented to the jury." *In re VanDalen*, 293 Mich App at 133. There was no indication that reversing the order of the verdict options on the verdict forms would either "add to an otherwise balanced and fair jury charge [or] enhance the jury's ability to decide the case intelligently, fairly and impartially." *Johnson*, 423 Mich at 327. Nor was there was any indication that the order of the verdict options affected the outcome of the trial, and thus, reversal is not warranted. *In re VanDalen*, 293 Mich App at 133.

## V. STATUTORY GROUNDS

Respondent-mother next argues that the trial court clearly erred in finding that a statutory ground for terminating her parental rights was proven by clear and convincing evidence. However, respondent-mother only conclusorily asserts that there was no clear and convincing evidence provided, and that the trial court therefore clearly erred. She does not recite the statutory grounds under which her parental rights were terminated, nor does she provide any statements of the law regarding the statutory grounds or interpreting the statutory grounds. She

did not apply any of the facts of the case to relevant caselaw or provide any analogous cases to support her position. Respondent-mother essentially failed to provide any meaningful legal analysis regarding this issue. Because respondent-mother merely asserted a position on appeal without providing any authority or meaningful legal analysis, she has abandoned this issue on appeal. See *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

## VI. HEARSAY EVIDENCE

Respondent-father next argues that the trial court erred in admitting hearsay statements and testimony from expert witnesses at the adjudication trial and the dispositional hearing regarding the children's credibility. We disagree.

As an initial matter, a considerable amount of hearsay and credibility evidence was introduced, most of it without objection. A trial court is generally not obligated to strike testimony *sua sponte* in the absence of an objection or any other request from counsel to preclude that evidence. See *People v Jones*, 66 Mich App 223, 232-233; 238 NW2d 813 (1975). Furthermore, neither respondent asserts that they received ineffective assistance of counsel. To the extent either respondent objected, we will review the trial court's admission of evidence for an abuse of discretion. *Albro*, 303 Mich App at 760. To the extent respondent-father complains of evidentiary errors to which no objection was made, our review is limited to plain error affecting respondent-father's substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). An error generally will not affect substantial rights if it did not affect the outcome of the proceedings. *Id*.

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evidence which is inadmissible for one purpose may be admissible for another purpose. MRE 105. The rules of evidence apply at the adjudication trial. MCR 3.972(C)(1). However, the rules of evidence do not apply at the initial dispositional hearing. MCR 3.973(E)(1). Moreover, "[a]ll relevant and material evidence, including oral and written reports, may be received and may be relied on to the extent of its probative value." MCR 3.973(E)(2).

The only apparent preserved objection to hearsay testimony, and the only objection respondent-father actually identifies, was an objection to the investigator's testimony regarding her conversations with the children after the 2012 CPS investigation. The investigator testified that the children initially stated that respondent-father was inappropriately touching them and that it made them feel uncomfortable, but the next day recanted to say that respondent-father was merely helping them bathe. The investigator noted that the 2012 CPS investigation was unsubstantiated. In regard to respondent-mother, we agree with the trial court that the purpose of the testimony was to demonstrate that, as of 2012, respondent-mother was placed on notice of the potential issues. In other words, the investigator's testimony was offered to establish its effect on respondent-mother and not for the truth of the matter asserted. It was therefore not hearsay. The trial court allowed the testimony admitted on that basis.

We agree with the trial court to some extent, but we also agree with respondent-father to some extent. Specifically, the investigator's testimony about her conversations with the children during the 2012 CPS investigation was seemingly used to prove the truth of the matter asserted.

However, MC testified at the adjudication trial that respondent-father perpetrated abuse in the bathroom, and JC testified specifically that respondent-father inappropriately touched her while she was bathing and that he did not seem to be doing so in a manner that indicated he was helping her bathe. Thus, the investigator's testimony was at the most cumulative, and the fact that it included the children's recantations might have even helped respondent-father by undermining the children's credibilities. Therefore, "based on review of the entire record, it is more probable than not that the error was not outcome determinative." *Nahshal*, 324 Mich App at 717. Accordingly, we conclude that the error was harmless. To the extent that respondent-father claims that hearsay evidence was erroneously admitted at the dispositional hearing, the Michigan Court Rules clearly state that the rules of evidence do not apply at that proceeding. MCR 3.973(E)(1). Thus, any argument that the trial court erred in admitting evidence as hearsay at the dispositional hearing lacks merit.

Respondent-father asserts several other claims of evidentiary error to which no objection was made. Respondent-father complains of several instances of hearsay testimony regarding what an eye doctor, and possibly other individuals, said about the children's eyesight and the effect of delaying obtaining glasses for them. No objection was made to this testimony. Importantly, respondent does not explain how this testimony prejudiced him, and we decline to speculate. *Mitcham*, 355 Mich at 203. We do not find that any hearsay pertaining to the children's eyesight issues affected respondent-father's substantial rights. *In re Utrera*, 281 Mich App at 8.

Respondent-father finally argues that three experts were improperly permitted to render opinions regarding the children's credibilities. "[E]xpert testimony regarding the credibility of a witness is improper, because the jury is the sole arbiter of witness credibility." *Franzel v Kerr Mfg Co*, 234 Mich App 600, 622; 600 NW2d 66 (1999). Again, however, respondent-father did not object. We note that Dr. Simmons in fact opined that the children had *decreased* credibility, and thus, even if it was improper, it benefitted respondents. Clearly, Dr. Simmons's testimony did not affect respondent-father's substantial rights. *In re Utrera*, 281 Mich App at 8.

Strauss and Dr. Mercado both opined that there was no indication that either child was lying during their psychological or psychiatric evaluations. The witnesses did not opine that the children's testimonies should be believed—only that there was no indication that they were lying. Experts may not vouch for the veracity of a witness, but experts may properly testify whether they found objective evidence within the scope of their expertise consistent or inconsistent with an ultimate fact at issue. *People v James*, 182 Mich App 295, 297-298; 451 NW2d 611 (1990). We are unpersuaded that the experts' testimonies here crossed the line. Additionally, the trial court had the opportunity to observe the children's testimonies, which it indicated that it found credible. "[R]egard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Finally, the only other evidence of which respondent-father complains is the admission at the dispositional hearing of a letter from JC. As noted, the rules of evidence do not apply at the dispositional hearing. MCR 3.973(E)(1). Because respondent-father has not presented argument regarding any other hearsay or credibility-assessment evidence, we decline to analyze them in the first instance, and we conclude that they must not have affected his substantial rights.

*Mitcham,* 355 Mich at 203; *In re Utrera*, 281 Mich App at 8.  Therefore, we cannot conclude that reversal is warranted.  See *Nahshal*, 324 Mich App at 717.

## VII.  CUMULATIVE ERROR

Lastly, both respondents argue that, although each of the errors in this case standing alone may not require reversal, their cumulative effect does require reversal.  We disagree.

We review de novo an issue of cumulative error to determine if the combination of alleged errors denied respondents a fair trial.  *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001).  "The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal.  In order to reverse on the grounds of cumulative error, the errors at issue must be of consequence."  *Id*. at 388 (citations omitted).  Stated differently, "the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial."  *Id*. (citation omitted).  As discussed, most of the errors asserted by respondents were not errors, and the remainder were harmless.  Because harmless errors do not accumulate, reversal is not warranted.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien