# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JERMAINE BURTON,

        Defendant-Appellant.

UNPUBLISHED
October 18, 2016

No. 327730
Wayne Circuit Court
LC No. 14-007693-FC

Before: GADOLA, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Following a bench trial, defendant was found guilty of carjacking, MCL 750.529a, armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b(1). He was sentenced as a third-offense habitual offender, MCL 769.11, to concurrent terms of 216 to 430 months in prison for the carjacking and armed robbery convictions, to be served consecutive to the sentence of two years in prison imposed for the felony-firearm conviction. Defendant appeals as of right. We denied his motion to remand for resentencing and a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).[1] We affirm defendant's convictions but remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Defendant's convictions arise out of a carjacking that occurred in the early morning hours of August 21, 2014. That night, Michael Kendrick stopped at a gasoline station on his way home from work. According to Kendrick, after pumping his gasoline, defendant approached him with a gun and told him to "drop everything and run." Kendrick dropped his wallet, car keys and cellular phone, and ran two blocks away to a friend's house. Kendrick reported the incident to police and within an hour received a call back informing him that his vehicle and items were retrieved. The next day, Kendrick chose defendant from a live line-up as the person who robbed him. At trial, Officers Borum and Barrett testified to spotting and then following Kendrick's car

---

[1] *People v Burton*, unpublished order of the Court of Appeals, entered January 21, 2016 (Docket No. 327730).

to the driveway of a Detroit residence where defendant exited Kendrick's vehicle and ran. Upon apprehension, the officers found Kendrick's cell phone and a similar amount of money to that taken from Kendrick on defendant's person, as well as a gun nearby. Defendant's theory at trial was that he was merely present at the Detroit residence, later learned to be his aunt's house, when Kendrick's vehicle pulled into the driveway. Defendant denied fleeing the scene and possessing a gun, or the cell phone and money attributable to Kendrick.

## II. OTHER-ACTS EVIDENCE

Defendant first argues that he was denied a fair trial because the trial court admitted other-acts evidence under MRE 404(b), specifically the testimony of Terrance Glenn, who identified defendant as the perpetrator of a different carjacking that occurred four days earlier on August 17, 2014. Defendant opposed the admission of this evidence at trial on the same grounds raised in this appeal and the issue is therefore preserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We review de novo whether a rule of evidence precludes admission. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). When an issue is properly preserved, error in the admission of other-acts evidence does not require reversal unless it affirmatively appears that it is more probable than not that the error was outcome determinative. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001). The defendant bears the burden of establishing that, more probably than not, a miscarriage of justice occurred. *Id*.

In *Mardlin*, 487 Mich at 615-616, the Court explained the process underlying a trial court's decision to admit other-acts evidence:

> To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is *not* simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character. The prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity. Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant *solely* to the defendant's character or criminal propensity. . . . Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403.

Evidence of misconduct similar to that charged is logically relevant to show that the charged act occurred if the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they were manifestations of a common plan, scheme, or system. *People v Sabin*, 463 Mich 43, 63; 614 NW2d 888 (2000).

We conclude that the trial court properly admitted Glenn's testimony under MRE 404(b). First, the prosecution established that the evidence was logically relevant in that Glenn's

testimony tended to rebut defendant's defense that when the police arrived at his aunt's house after the Kendrick vehicle pulled into her driveway, defendant was "merely present." It also tended to rebut the claim that the police and witnesses were all lying with respect to their identification of defendant as the perpetrator. *Mardlin*, 487 Mich at 615. Glenn positively identified defendant as the assailant who carried a black and silver .9-millimeter gun, pointed it at his chest, and demanded the keys to his vehicle. The evidence was thus probative of a fact other than defendant's character or criminal propensity, and relevant evidence is not barred simply because it also reflects on a defendant's character. *Id*. Defendant's argument that the other-acts evidence was not sufficiently similar to the present case to be admissible misunderstands the law on admission of prior misconduct—to be admissible under MRE 404(b), the other-acts misconduct evidence must only exhibit striking similarity with the misconduct being investigated if similarity of the two events is relied on by the prosecution for admission. See *Mardlin*, 487 Mich at 620 (explaining that "[t]he acts or events need not bear striking similarity to the offense charged if the theory of relevance does not itself center on similarity"). As stated earlier, the evidence was introduced to rebut defendant's claim that he was merely present at his aunt's house when the police arrived and substantial evidence that the two events were similar was thus not required. *Id*.

Apart from being logically relevant, the evidence was not more prejudicial than probative. "The trial court is in the best position to make MRE 403 determinations on the basis of a contemporaneous assessment of the presentation, credibility, and effect of testimony . . . ." *Id*. at 627 (quotation marks and citation omitted). The prior carjacking was relevant to defendant's claim that he was merely present when the police followed Kendrick's stolen car to his aunt's house. Moreover, the amount of unfair prejudice was minimal. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW21d 785 (1998). Here, the evidence was more than marginally probative of the fact that defendant was not "merely present."

We note that the trial court also admitted the evidence to prove defendant's identity and to support Kendrick's identification of defendant. We conclude that admission on this basis was error because there was no special quality tying the two carjackings together such that it would prove defendant's identity. *People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982); *People v Waclawski*, 286 Mich App 634, 673; 780 NW2d 321 (2009). Reversal is not required, however, because admission was proper to rebut defendant's "mere presence" defense. See *People v King*, 297 Mich App 465, 475; 824 NW2d 258 (2012) (quotation marks and citation omitted) (explaining that this Court will not reverse a trial court decision when the lower court reaches the correct result even if for a wrong reason).

## III. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that there was insufficient evidence to support his carjacking conviction. This Court "reviews de novo a challenge on appeal to the sufficiency of the evidence." *People v Ericksen*, 288 Mich App 192; 195; 793 NW2d 120 (2010). "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt."

-3-

*People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (quotation marks and citation omitted). "All conflicts in the evidence must be resolved in favor of the prosecution and [this Court] will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

Defendant does not specifically challenge the elements of the individual offenses but argues that there was insufficient evidence to establish his identity as the carjacker. Identity is an element of every offense, *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), that the prosecution must prove beyond a reasonable doubt through direct testimony or circumstantial evidence, *People v Kearn*, 6 Mich App 406, 409; 149 NW2d 216 (1967). Defendant argues that his mere presence in the stolen vehicle is insufficient to support a finding that he carjacked it. This argument is without merit because there was substantial proof that defendant was the carjacker. First, Kendrick testified that the area where he was carjacked was brightly lit and that he was able to clearly see defendant walk towards him with a gun and demand his vehicle. Further, he described the perpetrator as wearing dark jeans and a blue hoodie; a light blue hoodie was found in the front passenger seat of the stolen vehicle that defendant was seen getting out of, he was wearing dark jeans, he fled the police when confronted, and when he was apprehended he had $500 and Kendrick's cellular telephone on his person. Also, a gun consistent with Kendrick's description was found on the ground where defendant was apprehended. When viewed in a light most favorable to the prosecution, a trier of fact could find defendant's identity as the carjacker proven beyond a reasonable doubt. *Tennyson*, 487 Mich at 735.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied effective assistance because trial counsel failed to obtain the videotape of the Glenn carjacking, failed to obtain defendant's prior medical records, and failed to notify defendant's witnesses of the trial. We review de novo constitutional questions, like a claim of ineffective assistance of counsel. *Unger*, 278 Mich App at 242. When reviewing defense counsel's performance, the reviewing court must first objectively "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Next, the defendant must show that trial counsel's deficient performance prejudiced his defense, in other words that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citation omitted).

Defendant is unable to establish either prong of the test. Regarding the purported videotape of the Glenn carjacking, other than defendant's claim that he saw the recording, the record contains no evidence that such a videotape actually exists. Trial counsel was clearly aware of the videotape allegation because he questioned defendant on direct examination about it. Assuming that the tape exists and that defendant did see it, it is logical to assume that he saw it with his counsel while he was in custody and that trial counsel's decision not to offer the alleged videotape was a matter of trial strategy either because the evidence was ambiguous as to identity or unfavorable to the defendant. *People v Horn*, 279 Mich App 31, 38-39; 755 NW2d 212 (2008). In light of all the circumstances, defendant cannot establish that trial counsel's

-4-

actions were outside the wide range of professionally competent assistance. *Strickland*, 466 US at 690. Further, defendant is unable to demonstrate that failure to offer the videotape deprived him of a substantial defense because even if the evidence had been admitted, it would not have made a difference in the outcome of the trial given our conclusion that the evidence against defendant was substantial.

Defendant next argues that trial counsel erred by failing to obtain defendant's medical records to demonstrate that he was shot in the back three times 11 days before the carjacking. Defendant failed to submit his medical records to corroborate this assertion and has thus failed to establish the factual predicate for his claim, *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), and, in any event, he is unable to overcome the presumption that the decision was sound trial strategy, *Horn*, 279 Mich App at 38-39. We note that the Michigan Department of Correction (MDOC) document appended to the defense brief makes no mention of scarring or marks on the defendant's back that would support either bullet wounds or medical care for those wounds. Defendant argues that the medical records, coupled with the missing videotape, would have called into question whether he could have been the perpetrator of the Glenn carjacking and would have resulted in evidence of the Glenn carjacking not being admitted. However, the medical records would not likely have been compelling, even if they established that defendant was shot, because, given defendant's ability to run when confronted on the night of the second carjacking just four days later, it is unlikely that the court would have concluded that any limited mobility was of a significant nature four days earlier. Defendant claims the failure to admit the medical records also denied him his right to present a defense. However, defendant testified regarding his injuries, the length of his stay in the hospital and his recuperation period in relation to the time when the Glen carjacking occurred.

Finally, defendant argues trial counsel was ineffective for failing to tell his witnesses (mother, father, and girlfriend) of the trial. Defendant has not provided this Court with any affidavits from his potential witnesses but rather, states in his own affidavit that they were never notified of trial and states in his brief that they would have supported his version of events, without specifying what they allegedly would have said. Thus, defendant again fails to establish the factual predicate for his claim, *Carbin*, 463 Mich at 600, and is unable to overcome the presumption that the decision was sound trial strategy, *Horn*, 279 Mich App at 38-39.

## V. *BRADY* VIOLATION

Defendant argues for the first time on appeal that he was denied a fair trial because the prosecutor suppressed favorable impeachment evidence contrary to *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). This Court reviews de novo a defendant's claim of a constitutional due-process violation, such as a *Brady* violation. *People v Stokes*, 312 Mich App 181, 189; 877 NW2d 752 (2015). [T]he failure to assert a constitutional right ordinarily constitutes a forfeiture of that right." *Vaughn*, 491 Mich at 654. Reversal on the basis of a forfeited claim of error is not appropriate unless the defendant can establish: "(1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*.

In *Brady*, 373 US at 87, the Supreme Court recognized a defendant's right to evidence, holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, a defendant must prove that (1) the state possessed evidence of exculpatory or impeachment value; (2) the prosecution suppressed the evidence; and (3) the evidence, viewed in its totality, was material, meaning that had the evidence been disclosed to the defense, a reasonable probability exists that the result of the proceedings would have been different. *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014). "The government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good or bad faith . . . . Evidence is favorable to the defense when it is either exculpatory or impeaching." *Stokes*, 312 Mich App at 190 (quotation marks and citation omitted). " 'To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Id.*, quoting *Chenault*, 495 Mich at 150.

Defendant's *Brady* violation claim fails. As for prongs one and two, there is no record evidence that a videotape of the Glenn carjacking existed, other than defendant's assertion. Regarding the third prong, in light of Glenn's unequivocal identification, defendant cannot demonstrate that, even if there was a videotape of the Glenn carjacking, it would have been favorable to him. Defendant is unable to establish that the purported videotape was material because had the videotape existed and been disclosed to the defense, the result of the proceeding would not have been different. Moreover, the purported videotape was of the Glenn carjacking, not the carjacking for which he was convicted. Thus, the videotape is not favorable to defendant in relation to this case. Further, as discussed earlier in this opinion, the evidence against defendant is substantial.

## VI. SENTENCING

Finally, defendant argues that he was sentenced on the basis of a sentencing guidelines range calculated in violation of *People v Lockridge*, 498 Mich 358; 870 NW2d 502, cert den ___ US ___; 136 S Ct 590; 193 L Ed 2d 487 (2015), because the trial court scored offense variable (OV) 13 (continuing pattern of criminal behavior) on the basis of judicially-found facts, which were used to mandatorily increase the floor of the guidelines minimum sentence range in violation of his right to a jury trial. This Court reviews de novo questions of constitutional law, like a Sixth Amendment challenge to a defendant's sentence. *Lockridge*, 498 Mich at 373. Preserved *Lockridge* arguments are reviewed to determine whether the error was harmless beyond a reasonable doubt. *Stokes*, 312 Mich App at 198-199.

In *Lockridge*, our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US —; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient" because of "the extent to which the guidelines require judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables that mandatorily increase the floor of the guidelines minimum sentence range . . . ." *Lockridge*, 498 Mich at 364 (parenthetical omitted). Accordingly, the Court decreed that, although the guidelines would remain in effect, "a guidelines minimum sentence range

-6-

calculated in violation of *Apprendi* and *Alleyne* is advisory only." *Id.* at 365 and n1. The *Lockridge* Court held that "all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id.* at 395. With regard to the appropriate remedy in this situation, the Court held that "[i]n cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id.* at 397. For sentences imposed on or before July 29, 2015, like in this case, a *Crosby* remand is necessary for the trial court to

> first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [*Lockridge*, 498 Mich at 398 (quotation marks and citations omitted.]

In *Stokes*, 312 Mich App 198-202, this Court held that the *Crosby* remand procedure identified in *Lockridge* applies to preserved as well as unpreserved Sixth Amendment challenges to the scoring of the guidelines at sentencing.

Defendant challenges his score of 25 points for OV 13 (continuing pattern of criminal behavior), arguing that the score was the result of impermissible judicial fact-finding. We agree. Offense Variable 13, MCL 777.43(1)(c), provides that 25 points should be assessed when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." When determining the appropriate points under OV 13, "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). In this case, defendant was assessed 25 points on the basis of the two felony crimes against a person for which he was convicted—carjacking and armed robbery—and also on the basis of the Glenn carjacking case that was dismissed after he was sentenced on the current case. The trial court clearly relied on judicial fact-finding by including the uncharged Glenn carjacking for the third crime against a person when assessing points for OV 13. Defendant would have received 0 points for OV 13 had the trial court not relied on judicial fact-finding. See MCL 777.43(1)(g) (stating that 0 points should be scored for OV 13 where "[n]o pattern of felonious criminal activity existed"). If no points are assessed for this variable, defendant's OV level drops from Level III to Level II and his minimum sentence range under the guidelines as a third-offense habitual offender would be reduced from a range of 126 to 315 months to a range of 108 to 270 months. Judicial fact-finding beyond facts admitted by defendant or found by the trial court during the bench trial to score OVs was thus used to mandatorily increase the floor of the guidelines minimum sentence range. Therefore, under

*Lockridge*, defendant's Sixth Amendment rights were violated at sentencing. To determine whether the error in this case was harmless, a remand is necessary. Remand to the trial court to follow the *Crosby* procedures in the manner outlined in *Lockridge* for unpreserved errors is appropriate. *Stokes*, 312 Mich App at 198-199, 202.

Defendant's related argument, that trial counsel was ineffective for failing to challenge the scoring of OV 13, is without merit. Our Supreme Court did not apply the rule in *Apprendi*, as extended by *Alleyne*, to our sentencing guidelines until *Lockridge* was decided in July 2015, after defendant was already sentenced. OV 13 was appropriately scored before that date because a preponderance of the evidence existed to support the trial court including the Glenn carjacking in its calculation of OV 13. See *People v Ratkov*, 201 Mich App 123, 126; 505 NW2d 886 (1993) (recognizing that the prosecution must prove by a preponderance of the evidence any disputed facts used in calculating the sentence guidelines). Thus, defendant is unable to establish that trial counsel's performance was deficient and his ineffective assistance of counsel claim fails. *Vaughn*, 491 Mich at 669.

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens