# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEFFREY MARTIN SIX,

        Defendant-Appellant.

UNPUBLISHED
January 21, 2020

No. 338238
Wayne Circuit Court
LC No. 16-001862-01-FH

Before: STEPHENS, P.J., and K.F. KELLY and TUKEL, JJ.

TUKEL, J. (*dissenting*).

I write separately because I believe that remand is neither necessary nor justified. Rather, as I discern no abuse of the trial court's discretion, I believe that this Court should affirm defendant's conviction.

I agree with the majority's conclusion that the trial court's conduct of the voir dire should be reviewed for an abuse of discretion, MCR 6.412(C)(1), *People v Tyburski*, 445 Mich 606, 619 (1994); and with the majority's general statement of law regarding the principles of voir dire as expressed in *Tyburski*, 445 Mich at 618. I disagree, however, with the remainder of the majority's opinion—I do not believe that the majority affords the proper deference to the trial court's actions required by the abuse of discretion standard, and I also disagree with the majority's conclusion that we do not have a sufficient record before us to properly review the trial court's decision.

In the present case, at the conclusion of voir dire, the trial court conducted an unrecorded bench conference. Following the bench conference, the parties stated that they had no objections for cause as to any of the jurors; then exercised their peremptory challenges; and then a jury was impaneled. Following the impaneling of the jury, at the first break during which the jury was not present, defense counsel made a statement for the record that he was denied an opportunity "to do voir dire on LGBT issues."

Defendant substantially relies on caselaw pertaining to juror bias arising from pretrial publicity. In *Tyburski*, the Supreme Court held that the trial court had a "duty to exercise caution in the manner it conducted voir dire" in order to reveal a potential juror's bias based on "the high likelihood of media-induced bias." *Tyburski*, 445 Mich at 626. The present case, however, does not involve pretrial publicity. Instead, cases involving potential bias arising from a defendant's

-1-

demographic identity offer more appropriate guidance. I have found no Michigan case addressing jury voir dire and possible anti-LGBT bias, and the majority cites none, but decisions of federal courts and courts of our sister states can offer guidance. See *People v Bragg*, 296 Mich App 433, 454-455; 824 NW2d 170 (2012). While the relevant Supreme Court cases regarding voir dire all involve racial issues, decisions of other courts rely on those same standards in reviewing voir dire for issues regarding sexual orientation. See, e.g., *Berthiaume v Smith*, 875 F3d 1354, 1358 (CA 11, 2017) (noting that "To determine whether specific questioning is necessary in a given case, courts look to whether, under all of the circumstances presented, there is a reasonable possibility that a particular type of prejudice might have influenced the jury," and relying on cases involving allegations of racial discrimination in voir dire.). Thus, the applicable standard is that which applies to any other claim or allegation of discrimination.

In *Ham v South Carolina*, 409 US 524; 93 S Ct 848; 35 L Ed 2d 46 (1973), the defendant was "well known locally for his work in such civil rights activities as the Southern Christian Leadership Conference and the Bi-racial Committee of the City of Florence." *Id*. at 525. The defense theory was that the police framed the defendant for a drug charge to retaliate against him for his civil rights activities. *Id*. The Court held that because South Carolina law "permits challenges for cause, and authorizes the trial judge to conduct voir dire examination of potential jurors," the "essential fairness required by the Due Process Clause of the Fourteenth Amendment requires that under the facts shown by this record the petitioner be permitted to have the jurors interrogated on the issue of racial bias." *Id*. at 527.

In *Ristaino v Ross*, 424 US 589; 96 S Ct 1017; 47 L Ed 2d 258 (1976), the trial court had denied the defendants' request for voir dire regarding racial attitudes. The trial court expressed hope that jurors would "take their oaths seriously and understand the spirit of their oath," and expressed confidence that he, and other judges of his court, "would take the time to impress upon them, before, during, and after the trial, and before their verdict, that their oath means just what it says, that they are to decide the case on the evidence, with no extraneous considerations." *Id*. at 591. In discussing its decision in *Ham*, the Supreme Court observed that in that case "[r]acial issues . . . were inextricably bound up with the conduct of the trial." The Court noted that Ham was a prominent civil rights activist, and that his defense "was that he had been framed because of his civil rights activities." *Ristaino*, 424 US at 596-597. The Court stated that in *Ristaino*, by contrast, "The mere fact that the victim of the crimes alleged was a white man and the defendants were Negroes was less likely to distort the trial than were the special factors involved in *Ham*." *Id*. at 597. The Court concluded that the trial judge "acted within the Constitution in determining that the demands of due process could be satisfied by his more generalized but thorough inquiry into the impartiality of the veniremen." *Id*. at 598.

In *Rosales-Lopez v United States*, 451 US 182, 190; 101 S Ct 1629; 68 L Ed 2d 22 (1981), the Supreme Court elaborated on the distinction between *Ham* and *Ristaino*, stating:

> There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups. As *Ristaino* demonstrates [citing 424 US at 596 n 8], there is no *per se* constitutional rule in such circumstances requiring inquiry as to racial prejudice. Only when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case

does the trial court's denial of a defendant's request to examine the jurors' ability to deal impartially with this subject amount to an unconstitutional abuse of discretion.

LGBT status seemingly does not place an individual within "any particular racial or ethnic groups" as those terms are commonly understood. Nonetheless, as a distinct group subject to a history of discrimination, a defendant's LGBT status implicates the same considerations as would membership in a distinct "racial or ethnic" group. As such, the standards mandated by the Supreme Court regarding voir dire as it relates to membership in such racial or ethnic groups are applicable. Thus, in the present case, unless there are "more substantial indications of the likelihood" of "prejudice affecting the jurors in a particular case," the trial court's "denial of a defendant's request to examine the jurors' ability to deal impartially with this subject" does not "amount to an unconstitutional abuse of discretion." *Id.*

Thus, cases finding inadequate voir dire as to LGBT issues turn on whether a defendant's identity with a particular demographic group is inextricably bound up with questions of fact that the jury will have to decide. See, e.g., *Berthiaume*, 875 F3d at 1358; *Kemp v Ryan*, 638 F3d 1245 (CA 9, 2011). Because "[t]here is no constitutional presumption of juror bias for or against members of any particular" demographic group, in cases in which a defendant's demographic identity, whether racial, ethnic, or based on LGBT status, is not inextricably bound up with questions of fact which the jury will be called upon to decide, generalized voir dire regarding the jurors' impartiality and commitment to deciding the case based on the evidence suffices to safeguard the defendant's right to a fair and impartial jury. *Rosales-Lopez*, 451 US at 190. As "there is no *per se* constitutional rule in such circumstances requiring inquiry as to racial prejudice," *id.*, and given that the same standards applicable to any other form of discrimination apply to voir dire regarding LGBT issues, there simply is no constitutional rule requiring inquiry as to possible anti-LGBT prejudice, just as there is no such rule with regard to any other form of possible prejudice, absent some showing of a "substantial indication[] of the likelihood" of prejudice based on LGBT status.

Here, defendant made no such showing. Defense counsel stated only that he was denied the opportunity to inquire as to such issues, but did not state that there were any special considerations showing that there was a "substantial indication of the likelihood" of anti-LGBT prejudice. Indeed, the underlying assumption of defendant's request for voir dire was an assumption that jurors were prejudiced against LGBT individuals, contrary to the actual legal standards. As such, the trial court was well within its discretion in denying defendant an opportunity "to do voir dire on LGBT issues."

The majority elides the rule against presumed juror prejudice by relying on the fact that this case presents "another example of the common trial practices of the side-bar and chambers' conferences, which often leave a gaping hole in the appellate record. The better practice is to memorialize those conferences on the record immediately after they occur. However, no contemporaneous record was made in this case." *Ante*, at 4. I do not disagree that it is the better practice to memorialize such conferences immediately after they occur, but I also note that defense counsel did memorialize his objections to the trial court's refusal "to do voir dire on LGBT issues" at the first break during which the jury was not present, which followed shortly after the conclusion of voir dire. But even beyond that, the fact that a particular practice is not

the best practice does not demonstrate that the course which was followed constituted an abuse of discretion. "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231, 243 (2003). "When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment." *Id.* Because "There is no constitutional presumption of juror bias for or against members of any particular" group, *Rosales-Lopez,* 451 U.S. at 190, the trial court here selected one of the available principled outcomes, and its decision by definition was not an abuse of discretion. Indeed, absent evidence to the contrary, we presume that a trial court knows the law. People v Knapp, 244 Mich App 361, 389, 624 NW2d 227 (2001). As there is no contrary evidence here, we must presume that the trial court knew that there is no presumption of juror bias for or against members of any particular group, and properly exercised its discretion to deny voir dire based on a contrary assumption and the absence of any indication of the likelihood of bias.

Defendant argues that his sexual orientation was inextricably bound-up with the facts of this case because his defense was that his same-sex partner, Orsette, used his knowledge of defendant's financial dealings to fraudulently induce the state to pay defendant the $14,850 refund. The record, however, does not demonstrate that defendant made such an argument below. The record on this issue is that defendant "requested to do voir dire on LGBT issues," which falls short of arguing or demonstrating that any such issue was inextricably bound up with the facts of the case. As previously noted, however, defendant's broad request to conduct "voir dire on LGBT issues," together with his further statement that there *could* be a juror with anti-LGBT bias can only have been based on an assumption that there is in fact a presumption of juror bias against LGBT people. But such a presumption would stand *Rosales-Lopez* on its head. See *Rosales-Lopez*, 451 US at 190 ("There is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups."). The nature of the relationship between defendant and Orsette was relevant to the defense theory that defendant was not suspicious because Orsette often paid the couple's bills and because Orsette had ample funds in his business account. Nevertheless, the partners' motives for making those arrangements were tangential to defendant's explanation for why he relied on Orsette's explanations.

In *Ham*, by contrast, the defendant's race and his participation in civil rights causes *were* the defense—"[h]is basic defense at the trial was that law enforcement officers were 'out to get him' because of his civil rights activities, and that he had been framed on the drug charge." *Ham*, 409 US at 525. Thus, race and civil rights work were "inextricably bound up with the conduct of the trial." *Ristaino*, 424 US at 597. Here, however, defendant was not associated with a history of LGBT causes, and jurors were not asked to make subjective evaluations of what happened between defendant and his past partners. They were asked, instead, to judge the credibility of defendant's exculpatory theory, taking into consideration that he had made false accusations against four previous partners. Moreover, defendant's conduct in his other relationships was relevant only as it bore on his credibility. The central factual issue relevant to defendant's guilt or innocence was his *mens rea*, specifically whether defendant cashed a refund check for the fraudulent overpayment knowing that the repayment had been induced through fraud. Defendant's sexual orientation and behavior with his partners had little relevance to this

issue.  Therefore, based on defendant's general request "to do voir dire on LGBT issues," I believe that the trial court did not abuse its discretion when it denied the request.

In addition, the majority never makes clear what "settlement of the record" might disclose which would be relevant to how the voir dire was conducted.  The record already discloses that defense counsel did not provide the trial court with any "substantial indication of the likelihood of prejudice," as the record sets forth defense counsel's characterization of his objection.  The majority states that deciding the case on the present record "would be pure conjecture as to the factual or legal basis for the trial court's decision in this case."  *Ante*, at 5.  However, had there been any "substantial indication of the likelihood" of prejudice, or an argument that the facts were inextricably bound-up with anti-LGBT discrimination, defense counsel would have so stated.  The issue thus is not so much the trial court's factual or legal reasoning, which simply followed the default rule of no constitutional requirement of voir dire as to issues of potential prejudice absent some showing regarding unusual circumstances, but whether defendant had shown such unusual circumstances; as already noted, defendant failed to make any such showing.  Given the record, there is nothing further which could be added on remand which, had it been argued at trial, would have required the trial court to grant voir dire as to possible LGBT prejudice.  Thus, there is nothing which could be added to the record on remand which would have required voir dire as to LGBT issues; therefore, there is no issue regarding the record which ought to be or can be settled on remand.

Finally, it is worth noting that, as in *People v McKeever*, unpublished per curiam opinion of the Court of Appeals, issued May 25, 2017 (Docket No. 331594), rev'd on other grounds 503 Mich 879; 918 NW2d 526 (2018), cited by the majority, the trial judge in this case has retired.  While the record does not establish that the trial judge "has no memory of the case, nor does any other individual" as was the case in *McKeever*, because the trial judge in this case has retired he can no longer preside over this case on remand to explain the basis for his refusal to ask LGBT questions at voir dire.  *McKeever*, unpub op at 5.

Given all of these considerations, as this Court found in *McKeever*, I believe that "remanding the matter for further factual development would be an exercise in futility," *id*.  Rather, it appears that the majority's disposition of the case simply constitutes the first step on the inevitable journey to a new trial, composed of a remand to be followed by the ineluctable finding of an insufficient record and thus an order for a new trial, rather than a true remand "for settlement of the record" as to any material point.

I respectfully dissent, and would affirm defendant's conviction.


/s/ Jonathan Tukel