# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
January 21, 2020

v

JOSHUA ERROL MIX,

        Defendant-Appellant.

No. 343920
Berrien Circuit Court
LC No. 2017-003309-FC

Before: O'BRIEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct, MCL 750.520b(1)(c) (sexual penetration under circumstances involving another felony); kidnapping, MCL 750.349; third-degree criminal sexual conduct, MCL 750.520d(1)(b) (sexual penetration by force or coercion); assault with intent to commit sexual penetration, MCL 750.520g(1); domestic violence, MCL 750.81; and ethnic intimidation, MCL 750.147b. We affirm.

## I. FACTS

The victim met defendant in February 2016. The victim testified that after they started dating, defendant became jealous and possessive. According to the victim, defendant started having "episodes" during which his personality would change. At first the episodes were monthly, but by the end of their relationship, the episodes were daily. During the episodes, defendant verbally and physically abused the victim.

The victim recalled an incident that occurred in a hotel room in March 2017 when defendant "flipped" and threw the victim's phone across the room. He also threw a lamp at the victim, and it hit her. The victim left the hotel room and went to the lobby to call a cab home. The police were called to investigate what happened, but the victim did not disclose the incident to the police because she was embarrassed.

The victim recalled another incident that occurred around April 15, 2017. The victim went to defendant's apartment while he was sleeping. When he woke up, he could not find his cell phone, and he accused the victim of taking it. He then hit the victim hard on her back.

-1-

There was another incident that occurred sometime between April 19 and April 25, 2017. The victim arrived at defendant's apartment while defendant was intoxicated. Defendant became angry with the victim and went to shower, at which point the victim tried to leave. But defendant heard her leaving, and came out of the shower naked and grabbed her keys. He then threw the victim onto the couch, held her down with his knees, and started to masturbate on her. The victim thought she was going to pass out or that defendant was going to kill her.

Defendant eventually took off the victim's pants, but the victim held the front of her vagina so defendant could not penetrate it. Defendant grabbed the victim and moved her onto his bed, which was near the couch because defendant lived in a studio apartment. The victim continued to hold her vagina while on the bed, and she begged defendant to stop. Defendant rolled the victim over and penetrated her anally while the victim continued begging him to stop. After defendant finished, he rolled off of her and fell asleep. The victim left defendant's apartment and returned to her own apartment. She had blood in her underwear because her anus was bleeding.

That same morning,[1] the victim went to work and told her coworker, Jennifer Greathouse, what defendant did. Greathouse recounted at trial that the victim said that defendant had sodomized her, and that the victim's whole body was shaking.

On the same day that the victim told Greathouse what happened, defendant called the victim to ask why she left his place, and she told him that she left because he raped her. Defendant was remorseful and blamed the alcohol. Defendant and the victim exchanged numerous text messages in which they discussed what happened the night before. Screenshots of those text messages were entered into evidence at trial. Defendant also sent the victim a video of him masturbating and laughing. The victim testified that even after defendant sexually abused her, she wanted to make her relationship with him work because she still loved him. Their relationship nevertheless ended sometime before July 6, 2017, because defendant started seeing someone else.

On July 6, 2017, the victim decided to report what defendant did to his probation officer, Steve Church. Church corroborated the victim's testimony of what she said defendant did. Church described to the victim how defendant abused his first wife, and before Church could say what he did to his second wife, the victim stopped him saying that she did not want to know.[2] Church encouraged the victim to report defendant to the police.

---

[1] The victim testified that defendant sexually assaulted her around 3:00 or 4:00 a.m.

[2] Defendant's second wife, Karina Dawn-Marie Demorrow, testified at trial. Her testimony about defendant was similar to the victim's. Demorrow testified that after she married defendant, he changed. He started verbally and physically abusing her, but Demorrow continued the relationship despite the abuse. Demorrow testified that defendant tried to penetrate her without her consent by flipping her onto her back, but Demorrow kicked him, and he stopped. Demorrow testified that one day after defendant had verbally abused her, she decided that she

On July 7, 2017, the victim reported the incident to a Berrien County Detective Lieutenant. The detective realized that the victim reported the incident to the wrong police station and sent her to the Chikaming Township Sheriff's Department. Caleb Slavens, the Chikaming Township Patrol Sergeant, interviewed the victim. During the interview, the victim read Sergeant Slavens her text-message exchanges with defendant, and Sergeant Slavens requested that she save those text messages, which she did.

Defendant was convicted as described, and now appeals.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial because defense counsel at trial provided ineffective assistance by (1) failing to have an expert in cell-phone forensics testify and (2) failing to admit pictures showing that defendant and the victim were together between April 15 and April 18.

Defendant preserved his ineffective assistance of counsel claim by moving for a *Ginther*[3] hearing in this Court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). A panel of this Court granted defendant's motion.[4] The trial court held a *Ginther* hearing, and ultimately denied defendant's motion for a new trial. The trial court's findings of fact and conclusions of law following the hearing will be discussed where relevant.

Whether a defendant received effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews questions of constitutional law de novo, and factual findings are reviewed for clear error. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

To demonstrate ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Effective assistance is "strongly presumed," *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), and the defendant bears the heavy burden of proving otherwise, *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004).

## A. EXPERT IN CELL-PHONE FORENSICS

---

was done, and she called the police and filed a police report. Defendant was convicted of domestic violence in that case.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] *People v Joshua Errol Mix*, unpublished order of the Court of Appeals, entered January 14, 2019 (Docket No. 343920).

Defendant argues that defense counsel provided ineffective assistance at trial when he failed to call an expert in cell-phone forensics because such an expert would have testified that the text messages between defendant and the victim after the incident could have been fabricated, or alternatively the expert's testimony could have bolstered defendant's argument that the messages were taken out of context. We disagree.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Counsel's failure to call an expert witness amounts to ineffective assistance only if it deprived the defendant of a substantial defense. See *Payne*, 285 Mich App at 190. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

A couple days after the victim reported defendant to the police, she dropped her cell phone into a river. The victim had already saved the text messages in her cell-phone cloud as instructed during her interview with Sergeant Slavens, so the prosecution was able to recover the messages and present them as evidence at trial.

In his original appellate brief to this Court, defendant asserted that defense counsel never discussed the text messages with defendant, and that, had counsel done so, counsel "would have learned that [defendant] does not believe that the messages are authentic." According to defendant, the only way to prove his claim and determine the authenticity of the text messages was to consult an expert in cell-phone forensics. Defendant asserted that such an expert would have explained that "a screenshot of a text message does not suffice to authenticate the message" because "text messages can be faked in two very easy ways." Defendant concluded that "[t]he jurors needed to be educated on how the text messages could have been faked, especially since [defendant] disputed their authenticity," and that "a reasonable juror could conclude that there's a possibility that [the victim] faked the text messages and then disposed of her phone to prevent a forensic extraction."

At the *Ginther* hearing, defendant's trial counsel stated that he showed and discussed the text messages with defendant before trial. Defense counsel also testified that he did not hire a forensics expert for trial because defendant did not "deny that they were his text messages," but instead told counsel that the messages were taken out of context. Defense counsel felt that if he argued at trial that the text messages were faked, his argument would "be unsupported by fact." Defense counsel explained that, instead, his trial strategy was to argue that the messages were taken out of context, distorted, and manipulated.

Defendant appeared to testify similarly. Though he initially asserted that the text messages were not authentic, defendant testified on cross-examination that, when he said that the messages were "not authentic," he meant that he had not read the messages when the victim sent them:

    *Mr. Mead* [the prosecutor]: Mr. Mix, when you say that the text messages are not authentic, I just want to make sure I understand exactly what you mean.

-4-

Do you mean that they're chopped up, taken out of context; or do you mean that they're just made up from beginning to end?

*Defendant*: Some of it—Some of the words in the balloons look like it was conversations that Amy and I had, and then some of the conversation and words in there aren't—I never even read. But that could have been because I was at work, too, and those things could have been—

I mean there was—The word that is being used in court today is voluminous. Her and I had probably four or 5,000 text messages back and forth.

And I worked 12 hours a day seven days a week. And for many of those hours as my job—I could not get away from my job to talk to her, and so I'd have a backlog of up to 20, 30, 40 messages before I even was able to—I could have been answering a message from 20, 30 messages prior to the one she—than the one that there was a—a response to on any—on any given day. So, I mean, the conversation could be—You know, you could take your pick out of, like I said, 3,000 messages.

*Mr. Mead*: So it sounds like what you're saying is that they could, in fact, be authentic, you just necessarily wouldn't have read everything that you were responding to?

*Defendant*: Yes. And I don't dispute, and I know that she won't dispute the fact that she would accuse me of many different things on many different dates.

* * *

*The Court*: So you testified, with respect to the actual text messages, that you're not—you're not really sure they're not authentic; you're saying that there might be stuff before or after in the whole conversation that may be missing, but the actual text messages, you're not disputing the authentity [*sic*]—authenticity, rather, right?

*Defendant*: I cannot dispute the authenticity of all the text messages.

*The Court*: Okay.

*Defendant*: There are some of the text messages that I would have to dispute because I never read them.

The trial court ultimately found that defendant did not deny the authenticity of the text messages and held that a cell phone expert at trial would have been unnecessary.

In defendant's supplemental brief after remand, defendant argues that the trial court misunderstood defendant's argument. Defendant contends that his argument has always been "that the screenshots inaccurately portrayed the actual back and forth between [defendant] and

[the victim], [and] that the messages as represented in the four corners of the screenshots were not actual conversations that [defendant] and [the victim] had had." Defendant now argues that "the only way" to establish that the messages "were taken out of context" was "to present an expert on cell phone forensics to establish precisely how [the victim] could have accomplished this."

We begin by noting the obvious: defendant's argument has changed from his initial appellate brief to his supplemental brief. In his first brief, he argued that an expert in cell-phone forensics could have explained "how the text messages could have been faked" and that the jurors could have concluded "that [the victim] faked the text messages and then disposed of her phone to prevent a forensic extraction." In his supplemental brief, he argues not that the messages were faked, but that "the screenshots inaccurately portrayed the actual back and forth between" the victim and defendant. By shifting away from his original argument, we conclude that defendant intended to abandon his original argument that defense counsel at trial was ineffective for not presenting evidence that the victim faked the text messages.[5]

Defendant's remaining argument—that an expert in cell-phone forensics was necessary to establish that the text messages were taken out of context—is without merit. Defense counsel's argument at trial *was* that the text messages were taken out of context; counsel argued that the text messages had been distorted and manipulated. Defendant broadly asserts that "the only way to [establish that the text messages were taken out of context] was to present an expert on cell phone forensics to establish precisely how [the victim] could have accomplished this." Yet the testimony of the expert at the *Ginther* hearing did not explain how the victim could have taken the messages out of context; he only testified about the ways a person could fake text messages and conversations. Defendant does not explain how the testimony of an expert in cell-phone forensics could have supported defendant's argument that the text messages were taken out of

---

[5] Even if defendant insists on pursuing this abandoned argument, it would be meritless. The trial court found that defendant did not believe that the text messages were faked. While defendant testified that he thought the messages were not authentic, his testimony made clear that, to him, a message was "not authentic" if he had not read the message. He explained that he and the victim sent thousands of messages back and forth, and that his work schedule prevented him from being able to respond to all of the victim's messages. Thus, defendant was not asserting that the victim faked the messages, and the trial court's finding of the same was not clearly erroneous. Defendant's trial counsel similarly testified that defendant never told him that the messages were faked, but instead told him that the messages were taken out of context. Along the same lines, defense counsel testified that he talked to defendant on numerous occasions about the text messages, which was contrary to defendant's assertions in his initial appellate brief. The trial court appeared to credit defense counsel's testimony, which supports the court's conclusion that defense counsel had no reason to pursue an argument that the messages were faked. That is, it was not objectively unreasonable for defendant's trial counsel to refuse to pursue an argument that he believed, and that the evidence available to him confirmed, would "be unsupported by fact." Defense counsel's decision to not call an expert in cell-phone forensics to testify in support of an argument "unsupported by fact" did not amount to ineffective assistance.

context, let alone how this testimony was "the only way" to establish that. This is especially true because, as a matter of common sense, to establish that a text message was taken "out of context," one must know "the context" of the message. It is unclear how an expert, rather than a person to the conversation, is better suited to say what "the context" of a text message was, let alone how an expert is "the only" person who can say that.[6] We therefore conclude that defense counsel at trial was not ineffective for not calling an expert in cell-phone forensics because defendant failed to establish that this decision deprived him of a substantial defense. See *Payne*, 285 Mich App at 190.

## B. PHOTOGRAPHS

Defendant next contends that defense counsel at trial was ineffective for failing to admit photos of the victim and defendant together between April 15 and April 18. Defendant argues that the photos could have been used at trial to explain why the victim changed her testimony from the preliminary examination (where she said that defendant raped her on April 15) to the testimony she gave at trial (where she said that defendant raped her between April 19 and April 25), thereby impeaching her credibility and bolstering defendant's theory that the victim was lying to get back at defendant after she found out that he was cheating on her. We disagree.

At the preliminary examination, the victim testified that defendant sexually abused her on either April 14, 15, or 16. She said that she determined the date by looking at her old text messages. The victim also stated that she did not see defendant until "days after" the incident.

Right before jury selection on the first day of defendant's trial, defense counsel and the trial court discussed the admissibility of the photographs that defendant had stored on his cell phone. The photographs were of the victim, and they were taken by defendant. The dates of the photographs showed that defendant and the victim were together on April 15, 16, and 18. Defense counsel stated that he received the photographs a week and a half before trial. He also stated that he failed to disclose them to the prosecution at the status conference, which was a week before the first day of trial. The trial court told defense counsel that under MCR 6.201(A)(6), defense counsel was required to allow the prosecution an opportunity to inspect the photographs, and because defense counsel violated this rule, the trial court would not permit the introduction of the photographs.

At trial, the victim stated that defendant hit her on the back around April 15, and that the incident in which defendant penetrated her occurred between April 19 and April 25. When questioned by defense counsel about the accuracy of her preliminary examination testimony, the victim admitted that she misstated the date of the sexual abuse at the preliminary examination. The victim also admitted during trial that she continued a relationship with defendant after he sexually abused her.

---

[6] Indeed, at the *Ginther* hearing, defendant—not the expert—explained that the text messages were taken out of context because the victim would text him "20, 30, 40 messages" while he was at work and unable to respond, and so his responses "could have been answering a message from 20, 30 messages prior . . . ."

At the *Ginther* hearing, defense counsel admitted that he received the photographs over a month before trial. Defense counsel stated that he did not know why he told the trial court that he did not receive the photographs until a week and a half before trial. He also testified that he committed an error by not timely disclosing the photographs to the prosecution.

The victim testified at the *Ginther* hearing that she realized she was mistaken about her dates after the prosecution brought it to her attention after the preliminary examination but before trial. She realized that the text message she thought was about the sexual assault was actually about the incident where defendant hit her in the back. The trial court found that although defense counsel committed an error, his error did not prejudice defendant.

We agree with the trial court that defense counsel's failure to timely disclose the photographs to the prosecution, which resulted in the photos being excluded from trial, fell below an objective standard of reasonableness. See *Trakhtenberg*, 493 Mich at 52. And we likewise agree with the trial court that the error was not outcome determinative. Defendant argues that the photographs "supply a tangible reason for" why the victim changed the day of the rape—the victim "changed her story because she had seen the photographs and realized that they contradicted her story." The victim admitted at trial that she misstated the date of the sexual abuse at the preliminary examination and that she continued a relationship with defendant after he sexually abused her. It therefore appears that the photographs do not contradict the victim's "story." She admitted that she originally testified to the wrong date, so that piece of impeachment was already before the jury. More importantly, she admitted that she continued a relationship with defendant after he sexually abused her, so photographs of them together following the date of the rape would not have "contradicted her story"; it would have corroborated what she said. We therefore conclude that defense counsel's failure to have the photographs admitted was not outcome determinative, so defendant is not entitled to relief.[7]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola

---

[7] Defendant also argues that the cumulative effect of trial counsel's errors warrants reversal. As explained, trial counsel's only error was failing to admit the photographs, but that failure did not prejudice defendant or result in an unfair trial. Defendant is therefore not entitled to relief. See *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001).