*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 1, 2024

Plaintiff-Appellee,

v

JERRY JUNIOR HEATH,

No. 350430
Calhoun Circuit Court
LC No. 2018-001606-FC

Defendant-Appellant.

ON REMAND

Before: K. F. KELLY, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

This case returns to this Court on remand from our Supreme Court for further proceedings.[1] Following a jury trial, defendant was convicted of two counts of armed robbery, MCL 750.529, and sentenced, as a fourth habitual offender, MCL 769.12, to serve concurrent terms of imprisonment of 40 to 60 years. We once again affirm.[2]

## I. FACTS

This Court's earlier opinion in this case provides a summary of the underlying facts:

> This case arises from an armed robbery of two employees, J.B. and D.N., immediately after they closed an Arby's restaurant in Battle Creek, Michigan. Trial testimony established that as J.B. and D.N. were in the parking lot and about to drive away, when two assailants robbed them at gunpoint. The assailants then bound D.N. with zip ties and forced J.B. to re-open the Arby's and open the safe

---

[1] *People v Heath*, ___ Mich ___; 979 NW2d 658 (2022).

[2] JUDGE BOONSTRA has been substituted for now-retired JUDGE STEPHENS.

inside. At that point, a siren from a nearby fire truck scared the assailants, and they ran away.

> On a separate occasion, defendant robbed another individual, D.S., as D.S. was closing Sam's Discount Party Store in Battle Creek, Michigan. The prosecution sought to admit evidence of this robbery to show that defendant had a common scheme or plan, and the trial court allowed the evidence to be heard by the jury. Defendant was ultimately convicted of two counts of armed robbery. [*People v Heath*, unpublished per curiam opinion of the Court of Appeals, issued August 26, 2021 (Docket No. 350430), pp 1-2.]

This Court concluded that an offense variable was erroneously scored, correction of which would which change the recommended range for defendant's minimum sentence under the sentencing guidelines, and so remanded the case to the trial court for resentencing. This Court otherwise rejected the appellate claims of error. *Id*. at 1, 8.

Defendant sought leave to appeal in our Supreme Court, which, in lieu of granting leave, vacated "that part of the Court of Appeals judgment addressing the admission of other-acts evidence," and remanded this case to this Court with instructions to reconsider the bad-acts issue "in light of *People v Denson*, 500 Mich 385 (2017), and *People v Golochowicz*, 413 Mich 298, 310-312 (1982)." *People v Heath*, ___ Mich ___, ___; 979 NW2d 658 (2022). The Court explained, and instructed, as follows:

> The prosecutor argued in the trial court that the other-acts evidence was relevant to prove a common plan or scheme. However, merely reciting a proper purpose for admitting other-acts evidence is insufficient to support admission of such evidence. *Denson*, 500 Mich at 400. Rather, courts must "closely scrutinize" whether that evidence is logically relevant to the alleged proper purpose. *Id.* In this case, the other-acts evidence was not logically relevant to prove a common plan or scheme, as it was undisputed that the alleged offense occurred. See *People v Sabin (After Remand)*, 463 Mich 43, 63 (2000) (explaining that "evidence of similar misconduct is logically relevant *to show that the charged act occurred* where the uncharged misconduct and the charged offense are sufficiently similar to support *an inference that they are manifestations of a common plan, scheme, or system*") (emphasis added). Instead, the only possible logically relevant proper purpose for the admission of this evidence was to prove identity, i.e., that defendant was the one who committed the charged offense. "*Golochowicz* identifies the requirements of logical relevance when the proponent is utilizing a *modus operandi theory* to prove *identity*." *People v VanderVliet*, 444 Mich 52, 66 (1993).

> On remand, the Court of Appeals shall apply *Golochowicz* to determine whether the other-acts evidence was admissible to prove identity. The Court of Appeals shall consider whether the defendant's other act and the charged offense were sufficiently similar to support this theory of relevance. See *Denson*, 500 Mich at 402-403. In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Heath*, 979 NW2d at 658-659.]

## II.  STANDARD OF REVIEW

"We review a trial court's evidentiary decisions for an abuse of discretion."  *People v Danto*, 294 Mich App 596, 598-599; 822 NW2d 600 (2011).  "A trial court abuses its discretion when its decision falls outside the range of principled outcomes."  *Id*. at 599.  "If an error is found, defendant has the burden of establishing that, more probably than not, a miscarriage of justice occurred because of the error."  *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001).  "No reversal is required for a preserved, nonconstitutional error unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative."  *Id*. (quotation marks and citation omitted).

## III.  DISCUSSION

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  MRE 404(b)(1).  However, such evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . ."  *Id.*  This rule of evidence mirrors MCL 768.27 but adds "opportunity, preparation and knowledge" to the list of circumstances that other bad acts may be used to prove.  *People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982).

In its earlier opinion in this case, this Court opined that the similarities between the two robberies at issue rendered the earlier one relevant because "[t]he similarities made it more probable that defendant planned and executed the robberies."  *Heath*, unpub op at 3.  This Court additionally acknowledged the prosecution's burden "to prove identity as an element of every offense," and concluded that "defendant was sufficiently identified through his common plan or scheme," as well as "through DNA evidence."  *Id*. at 7.  This Court thus acknowledged that the basis for offering the challenged evidence was proving identity.  Accordingly, our Supreme Court's observation that "the only possible logically relevant proper purpose for the admission of this evidence was to prove identity, i.e., that defendant was the one who committed the charged offense," *Heath*, 979 NW2d at 658, offers this Court no corrective guidance.  However, *Golochowicz* as it applies to MRE 404(b) is instructive.

In *Golochowicz*, our Supreme Court stated that MRE 404(b) and MCL 768.27 "stand as exceptions to the general rule of inadmissibility of evidence of a defendant's other crimes," and explained that the reason for the general policy against admitting such evidence for substantive purposes is "to avoid the danger of conviction based upon a defendant's history of other misconduct rather than upon the evidence of his conduct in the case in issue."  *Golochowicz*, 413 Mich at 308.  The Court explained:

> Given the potential for prejudice which inheres in the admission against a defendant of evidence of similar uncharged bad acts, the statutory and decisional exceptions to the general rule of exclusion of such evidence have been confined to a few narrowly defined circumstances are required to meet a number of evidentiary safeguards to warrant proper admission into evidence.  Those safeguards . . . required at the time of trial that before evidence of the defendant's other misconduct may be admitted: (1) there must be substantial evidence that the defendant actually

perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstances of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice. [*Id*. at 308 (footnote omitted).]

The Court then elaborated as follows:

Where, as in this case, the only conceivable justification for admission of such similar-acts evidence is to prove the identity of the perpetrator, the link is forged with sufficient strength to justify admission of evidence of the separate offense only where the circumstances and manner in which the two were committed are so nearly identical in method as to earmark the charged offense as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The commonality of circumstances must be so unusual and distinctive as to be like a signature. [*Id.* at 310-311 (cleaned up).]

The salient application of *Golochowicz* is its requirement of "some *special* quality or circumstance of the bad act tending to prove the defendant's identity . . . ." *Id*. at 309 (emphasis added). Indeed, cases since *Golochowicz* concerning use of MRE 404(b) evidence to prove identity have acknowledged the need for some special quality or circumstance. See, e.g., *People v Lee*, 434 Mich 59, 93; 450 NW2d 883 (1990) ("It is the distinguishing characteristics which constitute the acts as similar within the meaning of MRE 404(b), not the fact that all constitute the same crime or are violative of the same statute. The distinguishing, peculiar or special characteristics which are common to the acts and thus personalize them are said to be the defendant's signature which identifies him as the perpetrator.") (cleaned up).

Thus, as directed by our Supreme Court, we "apply *Golochowicz* to determine whether the other-acts evidence was admissible to prove identity," *Heath*, 979 NW2d at 658, by focusing on *Golochowicz*'s characterization of MRE 404(b) as a "general rule of exclusion" subject to an exception for proving identity only when "some special quality or circumstances of the bad act tending to prove the defendant's identity" is present. *Golochowicz*, 413 Mich at 308.

Our Supreme Court also directed this Court to consult *People v Denson*, 500 Mich 385; 902 NW2d 306 (2017), to decide anew "whether the defendant's other act and the charged offense were sufficiently similar" to be relevant to the question of identity. *Heath*, 979 NW2d at 659. In *Denson*, 500 Mich at 402-403, our Supreme Court explained as follows:

In evaluating whether the prosecution has provided an intermediate inference other than an impermissible character inference, we examine the similarity between a defendant's other act and the charged offense. . . . The degree of similarity that is required between a defendant's other act and the charged

-4-

offense depends on the manner in which the prosecution intends to use the other-acts evidence. . . .

* * *

. . . If the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the charged offense, we require a striking similarity between the two acts to find the other act admissible. [Cleaned up.]

The Court added that, when the theory of relevance is similarity, " 'the more similar to the prior act to the charged crime, the closer the evidence to the admissibility threshold.' " *Id.* at 404, quoting *People v Crawford*, 458 Mich 376, 395 n 13; 582 NW2d 785 (1998).

As noted, this Court in its earlier opinion acknowledged that defendant did not dispute that the subject armed robbery occurred, *Heath*, unpub op at 7, and that the evidence of other bad acts was used to prove identity, *id*. at 1, 3. Accordingly, we were properly concerned with "whether 'the uncharged misconduct and the charged offense are sufficiently similar.' " *Id*. at 2, quoting *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009). However, this Court continued as follows:

There must be such a concurrence of common features that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design. However, a high degree of similarity is not required, nor are distinctive or unusual features required to be present in both the charged and the uncharged acts. For ascertaining the existence of a common plan, the necessary degree of similarity is greater than that needed to prove intent, but less than that needed to prove identity. [*Id*. at 2-3 (cleaned up).]

Answering our Supreme Court's directive on remand now calls for consideration anew whether the similarities between the earlier robbery and the charged offense share sufficiently special or distinctive features to render the challenged evidence logically relevant to the specific issue of identity. In the previous opinion, this Court held as follows:

Defendant first argues that the evidence was not offered for a proper purpose because the two robberies are not similar enough to show a common scheme or plan. However, there were more than just mere similarities between the two robberies to show a common scheme or plan. There was significant evidence from both robberies that the assailant robbed store employees late at night after they closed their store and were getting into their vehicles. The assailant then took the victims' wallets and walked the victims back to their places of business and tried to get the victims to open the businesses. The assailant fled from the scene each time because of fear that the authorities had been alerted. Also, the assailant was armed each time and wore a shirt over his face as a mask. There were enough similarities between the uncharged robbery of D.S. and the robbery in the present case to be sufficiently similar.

Defendant next argues that the evidence of the prior robbery was irrelevant because whether defendant was guilty of D.S.'s robbery has no bearing on whether he was guilty of the robbery in question. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. And evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system.

In this case, defendant's common plan between the two robberies was relevant. The similarities made it more probable that defendant planned and executed the robberies. As stated earlier, these robberies both occurred at night as the employees were closing their place of business and getting into their vehicles. The assailant was also armed and wore a shirt over his face. Therefore, the similarities are relevant to support an inference that they are manifestations of a common plan, scheme, or system.

There were differences between the robberies, and defendant highlighted these differences in the trial court. For instance, the Arby's robbery involved two assailants and two victims, while D.S.'s robbery involved one assailant and one victim. The Arby's robbery involved a gun and zip ties, while D.S.'s robbery involved a hammer and no zip ties. But even if this was a case in which reasonable persons could disagree, the trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. Therefore, the evidence was admitted for a proper purpose: showing a common scheme or plan between the two robberies. [*Id.* at 3 (cleaned up).]

It is not especially distinctive that the respective victims were robbed after closing their places of employment and returning to their vehicles, or that the respective offenders demanded their victims' wallets. Nor is it distinctive that the respective assailants were armed, given that the two events featured entirely different weaponry. Of only slightly greater distinction is that the assailants both times attempted to force the victims to give them access to the businesses involved. Perhaps the most distinctive commonality is that the assailants in both instances attempted to conceal their identity specifically by wearing a shirt over the face. However, we now conclude that this much distinctiveness, especially considered in light of the several differences this Court identified, was not enough for the earlier robbery to be sufficiently similar to the instant one as to render it logically relevant for the purpose of showing a common perpetrator, i.e., identity.

Having concluded that admission of the challenged MRE 404(b) evidence was error, the question arises whether that error was harmless. "If the court's evidentiary error is non-constitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citations omitted).

The Supreme Court expressed no disagreement with the part of our previous opinion where this Court highlighted the DNA evidence presented below, while rebuffing defendant's Standard 4 challenge to the sufficiency of that evidence:

Defendant does not dispute that the crime of armed robbery was committed. Rather, defendant disputes that he was not sufficiently identified as the assailant. The prosecution is required to prove identity as an element of every offense. However, similar to other elements of an offense, identity may be proven by circumstantial evidence and reasonable inferences drawn from such evidence. In fact, circumstantial evidence is often stronger and more satisfactory than direct evidence. It is true that neither of the victims could identify defendant as an assailant during the robbery. But defendant was sufficiently identified through his common plan or scheme and through DNA evidence.

* * *

. . . The DNA evidence showed there was an enormous probability that defendant handled the zip ties that were used to restrain D.N. during the robbery. On the first zip tie, it was 92-billion times more probably that the DNA profile originated from defendant and two others. On the second zip tie, it was 28-billion times more likely that defendant was a contributor. The expert witness further explained that anything over 10-thousand times more likely was strong support. This Court has previously recognized that DNA identification is generally accepted to be accurate within the scientific community. Therefore, defendant was sufficiently identified through circumstantial evidence and indirect evidence.

Defendant then challenges the credibility of the DNA evidence and argues that the chain of custody was broken. Defendant also argues that the defense expert discredited the DNA analyses as well. However, these are credibility arguments, and it is the jury's duty to assess credibility and give weight to evidence. [*Heath*, unpub op at 7 (cleaned up).]

Thus, there is compelling DNA evidence linking defendant to the zip ties used in the robbery. This sufficiently establishes his participation in the crime. So much so that the improper use of the MRE 404(b) evidence did not undermine the verdict under our applicable standard of review. While defendant offers an explanation for the fact that his DNA was on the zip ties, testifying that he purchased a package of zip ties at a Napa Auto near the Arby's in about July 2017 and disposed of them in a garbage can in a park, this testimony was implausible. Defendant's explanation would require the jury to believe that an unknown robber randomly decided to remove zip ties from a garbage can at a park and then use them in a robbery several miles away, rather than, the more plausible explanation that the defendant used the zip ties himself in the robbery. We find the following exchange between the prosecutor and defendant particularly illuminating:

*Q*: So, you admit that these robberies happened -- this robbery happened at Arby's. You admit that zip ties with your DNA on them were found and used to bind the Defe -- the victim and I'm assuming that you're expecting the jury to believe that zip ties with your DNA on them made it all the way to five miles to

Arby's after you threw them away in the trash can, rather than you taking them with you and perpetrating the robbery. Is that what you expect the jury to believe?

*A.* Correct. Yes.

Accordingly, given the DNA evidence and the fact that defendant failed to offer a credible explanation for it while testifying,[3] we conclude that erroneous admission of the MRE 404(b) evidence was not outcome determinative.

## IV. CONCLUSION

The trial court abused its discretion by admitting the MRE 404(b) evidence, but that error was not outcome determinative. We affirm.

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ Michael J. Riordan

---

[3] In fact, if the jury found that defendant committed perjury with his testimony in this regard, it was able to use that fact as affirmative evidence of guilt. See *Wright v West*, 505 US 277, 296; 112 S Ct 2482; 120 L Ed 2d 225 (1992) ("And if the jury did disbelieve West, it was further entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt[.]").